**UNITED STATES of America,**
**Appellee,**

v.

**Enrico CAMPANALE and Donald Matthews, Appellants.**

**UNITED STATES of America,**
**Appellee,**

v.

**Mike GRANCICH et al., Appellants.**

**Nos. 73–2643, 73–2833, 73–2747 and 73–2865.**

United States Court of Appeals, Ninth Circuit.

June 4, 1975.
Rehearing Denied Sept. 2, 1975.

---

1. *See* Winston-Salem Printing Press. & A. U. .v. Piedmont Publishing Co., 393 F.2d 221, 226–27 (4th Cir. 1968).

---

Thomas H. Carver (argued), Beverly Hills, Cal., for appellants.

Peter M. Shannon, Atty., U.S. Dept. of Justice (argued), Washington, D.C., for appellee.

## OPINION

Before CHAMBERS and HUFSTEDLER, Circuit Judges, and KING,* District Judge.

PER CURIAM:

### STATEMENT OF THE CASE

A nine-count indictment returned on June 29, 1972,[1] in the United States Dis-

---

\* The Honorable Samuel P. King, United States District Judge for the District of Hawaii, sitting by designation.

1. Indictment No. 10638–CD which superseded an earlier indictment (No. 8283–CD). The earlier indictment did not include Campanale, Grancich, Martinez, or Matthews.

trict Court for the Central District of California charged appellants and three co-defendants[2] with conspiracy to conduct a pattern of racketeering activity (Counts 1 and 2) in violation of 18 U.S.C. § 1962(d), and with substantive offenses of requesting and receiving money in violation of 29 U.S.C. § 186 (Counts 3 and 4), obstructing and attempting to obstruct interstate commerce by extortion in violation of 18 U.S.C. § 1951 (Counts 5, 6 and 7), and picketing for personal profit in violation of 29 U.S.C. § 522 (Counts 8 and 9).[3] Another indictment returned on February 13, 1973, just prior to trial[4] charged Galea and Martinez with one count of obstruction of justice through injury to property of Robert Dougherty because of his testimony before a grand jury, in violation of 18 U.S.C. § 1503. The two indictments were consolidated for trial.

The June indictment in Counts 1 and 2 charged two extortion conspiracies in the Vernon, California, area by members of Meat and Provisions Drivers, Teamsters Local 626 (hereinafter "Local 626")[5] and Pronto Loading and Unloading Company (hereinafter "Pronto")[6] to participate in a pattern of racketeering activity. Specifically, Count 1 charged a conspiracy between 1968 and 1972 to conduct a pattern of racketeering activity by intimidating and forcing meat packers to contract for Pronto's services and by extorting money from Pronto's competitors in the unloading business as a condition for continuance in business, and set out seven overt acts of which three occurred after October 15, 1970.[7] Count 2 charged a conspiracy between 1968 and 1972 to conduct a pattern of racketeering activity by extortionate intimidation of meat packers, and set out ten overt acts of which five occurred after October 15, 1970.

Following a jury trial in March 1973, Galea, Grancich, Jayich, and Macht were convicted of the Count 2 conspiracy; Grancich was convicted of the Count 1 conspiracy and of the substantive offenses in Counts 3 and 4; Campanale and Matthews were convicted of the Count 1 conspiracy and of the substantive offenses in Counts 5 and 6; Galea was convicted of the Count 1 conspiracy, the substantive offenses in Counts 3, 4, 5, and 7, and the offense charged in the February indictment; Martinez was convicted of the offense charged in the February indictment.

Campanale and Matthews filed separate notices of appeal (Nos. 73–2643 and 73–2833.) Grancich, Jayich, and Macht (No. 73–2865) and Galea and Martinez (No. 73–2747) filed a joint notice of appeal.[8] All appeals were heard together.

We reverse as to the Count 2 conspiracy and affirm as to all other counts.

## ISSUES

Appellants Campanale and Matthews joined in the other appellants' arguments and raised nine issues or errors, as follows:

I. The trial court's denial of their motion for a separate trial.

II. The trial court's denial of their motion for a bill of particulars and to

---

**2.** The three co-defendants were acquitted.

**3.** Count 1: Campanale, Galea, Grancich, Martinez, Matthews,

Count 2: Chacon, Galea, Grancich, Jayich, Macht, Martinez, Rico,

Count 3: Galea, Grancich,

Count 4: Galea, Grancich,

Count 5: Campanale, Galea, Grancich, Matthews,

Count 6: Campanale, Matthews,

Count 7: Galea,

Count 8: Galea, Jayich, Macht, Rico, Santana,

Count 9: Chacon, Macht, Rico.

**4.** Indictment No. 11933–CD.

**5.** Appellants Archie Galea, Mike M. Grancich, Anthony Jayich, and Peter Macht.

**6.** Appellants Enrico Campanale and Donald Matthews were part owners of Pronto. Campanale was also president.

**7.** October 15, 1970, is the effective date of the Organized Crime Control Act of 1970 of which 18 U.S.C. § 1962 is a part. See Pub.L. 91–452, Title IX, § 901(a), 84 Stat. 942.

**8.** All five filed a joint notice of appeal but Grancich, Jayich, and Macht were allowed to file in forma pauperis.

strike surplusage and to dismiss the indictment.

III. The trial court's denial of their motion for a judgment of acquittal.

IV. The trial court's admission of evidence "against Appellants Campanale and Matthews on matters that were not the subject of the indictment against them."

V. The trial court's action in restricting cross-examination and excluding evidence, especially as to the financial condition of employers in the unloading service industry in Vernon, California.

VI. The trial court's instructions, especially with respect to the conspiracy charges.

VII. The admission of evidence as to acts occurring prior to October 15, 1970, in support of the conspiracy charges, as a matter of evidentiary law.

VIII. The admission of evidence as to acts occurring prior to October 15, 1970, in support of the conspiracy charges, as a matter of statutory interpretation.

IX. The constitutionality of the Organized Crime Control Act of 1970 if interpreted to permit evidence as to acts occurring prior to October 15, 1970, in support of a conspiracy charge under the statute.

Appellants Galea, Grancich, Jayich, Macht, and Martinez joined in all of the arguments presented by Appellants Campanale and Matthews, and raised four additional issues, as follows:

X. The conduct of the trial judge was such as to deprive appellants of their right to a fair trial.

XI. The prosecuting attorney was guilty of purposeful and flagrantly prejudical conduct such as to deprive appellants of their right to a fair trial.

XII. The evidence adduced at trial was insufficient to justify any of the convictions.

XIII. 18 U.S.C. § 1503 does not apply to the conduct brought out at the trial.

## JAYICH and MACHT

Jayich and Macht were business agents of Local 626. They were found not guilty of any substantive offense, but guilty of the Count 2 conspiracy offense. Also found guilty of the Count 2 conspiracy offense were Chacon and Rico.[9] As to the latter two, the trial judge entered a judgment of acquittal notwithstanding the verdict. We agree with these appellants that their situation was indistinguishable as a matter of law from that of Chacon and Rico.

The government's argument in this regard is notably skimpy. The government's brief states:

The evidence was also sufficient to convince the jury beyond a reasonable doubt that business agents Jayich and Macht were members of the Count 2 conspiracy. Once a conspiracy has been clearly established, slight evidence may be sufficient to connect a defendant with the conspiracy. [citing cases].

This "slight evidence" is summarized by the government as follows:

[On April 2, 1971] Macht prevented Ruchti employees from picking up meat at a packing house and told Ruchti II that he could not do business in California without Grancich's approval. (Tr. 466, 783.) On April 28th, Jayich chased a Ruchti truck and told the driver he would like to work him over (Tr. 785, 816). On April 28th and 29th Macht made threatening gestures with his fists against Ruchti II and against the son of the owner of the property rented by Ruchti Transport. (Tr. 825, 828.) On May 5th when Galea and Loya tried to break in the door of the Paramount cooler, Macht and Jayich stopped meat deliveries to the cooler (Tr. 794, 799). The evidence, therefore, was sufficient that Jayich and Macht were members of the Count 2 conspiracy.

9. Edward Chacon was President of Local 626. Charles Rico was a business agent of Local 626.

The April 28th and 29th actions detailed took place in connection with picketing carried on as part of a dispute over wage claims. These picketing activities were the subjects of Counts 8 and 9, respectively, of the June indictment. Those charged in these counts, including Jayich and Macht, were found not guilty. But the April 28th incident was set out as one of the "criminal violations" committed by the defendants in furtherance of the conspiracy—and the only "criminal violation" naming Jayich and Macht (and also Chacon and Rico).

■ The considerations which led the trial judge to grant a judgment of acquittal *non obstante veredicto* to Chacon and Rico apply with equal force to Jayich and Macht. We find the evidence adduced at the trial to be insufficient to sustain the convictions of Jayich and Macht under Count 2 of the June 29, 1972, indictment.

### THE COUNT 2 CONSPIRACY

As to the Count 2 conspiracy itself, the government failed to prove any separate conspiracy.

Although 18 U.S.C. § 1962(c) is rescued from ex post facto invalidity because the statute requires that at least one act of "racketeering activity" occur after the effective date of the statute,[10] no solid evidence exists that any such overt act did occur with reference to the Count 2 conspiracy.

The first series of post-1970 acts on which the government relies are the payments from members of the unloading business to members of the union. The government relies on these same payments to support also the Count 1 conspiracy. This raises a preliminary question whether Counts 1 and 2 charge separate conspiracies, and, if so, what the difference is.

■ Count 1[11] lists seven crimes committed in furtherance of that conspiracy. Count 2[12] lists six of these same crimes to support that conspiracy. The implication arises that the government is attempting to make two conspiracies out of one so as to increase each defendant's liability. But even when a conspiracy contemplates several crimes, only one conspiracy can be charged and punished. *Braverman v. United States,* 317 U.S. 49, 63 S.Ct. 99, 87 L.Ed. 23 (1942).[13] The conspiracy to take money from the various unloading businesses was a single conspiracy requiring participation in the affairs of both Pronto and Local 626.

---

**10.** See discussion below.

**11.** The Count 1 conspiracy charges that the Pronto defendants and the Local 626 members conspired:

> to conduct and, directly and indirectly, participate in the conduct of the affairs of Vernon Loading and Unloading Company, Inc., Pronto Loading and Unloading Company, Inc., and Local 626 through a pattern of racketeering activity in violation of 18 U.S.C. § 1962(c).
>
> It was a part of the said conspiracy that the defendants would, through harassments and threats of economic loss, intimidate various meat packers and other related businesses for purposes of extorting, receiving and accepting money and other things of value.
>
> It was a further part of the conspiracy that the defendants would, through threats of economic loss, force meat packers to contract for the services of Vernon . . . and Pronto. . . .
>
> It was further part of the conspiracy that the defendants would extort money from

some of the competitors of "Vernon" and "Pronto" as a condition to those competitors continuing to operate their business and would force other competitors out of business.

**12.** The Count 2 conspiracy charges that the Local 626 defendants conspired:

> to conduct and participate, directly and indirectly, in the conduct of the affairs of Local 626 through a pattern of racketeering activity.
>
> It was a part of the said conspiracy that the defendants would, through harassments and threats of economic loss, intimidate various meat packers and other related businesses for purposes of extorting, receiving and accepting money and other things of value.

**13.** *Braverman* considered a single conspiracy which violated only the general conspiracy statute, though several substantive crimes were planned. The court held that only one violation had occurred and only one penalty could be imposed. *See also* United States v.

Even if one accepts the government's position that there were separate conspiracies—a joint conspiracy between Pronto and Local 626 members to extort payments from unloading companies and a separate conspiracy to extort payments from the meat packers—payments from Pronto to Local 626 cannot support the second conspiracy. Such payments between conspirators are irrelevant to the asserted purpose of the Count 2 conspiracy.

The government also relies on a second group of post-1970 acts to support the Count 2 conspiracy. These acts grew out of a dispute between Local 626 and a Mr. Ruchti, the owner of a meat delivery business. The union claimed that Ruchti owed it money. Galea, Jayich, and Macht attempted to collect this money by picketing and interfering with the movement of Ruchti's trucks. On one occasion, Galea and two helpers attacked one of Ruchti's meat coolers with a 4″ x 6″ piece of lumber. The government charged these defendants with the substantive crimes of picketing for profit and extortion. All defendants were acquitted of picketing for profit; Galea was convicted of extortion for his attack on the cooler.

The picketing acquittals presumably eliminate those acts from consideration under the conspiracy count. Only the meat cooler attack can be used to support the Count 2 conspiracy. But there is no evidence that this attack was part of a larger conspiracy. In fact, it has an air of spontaneity inconsistent with the long-range conspiracy charged by the government. It was not repeated. The government did not establish any connection between that attack and the alleged program of extortion used on the meat packers before 1970.

The third and final group of acts on which the government relies to show a post-1970 conspiracy comprises alleged attempts by Grancich and Martinez to obstruct the racketeering investigation by intimidating and punishing a key witness. There is very little evidence that these acts were part of any conspiracy. The government claims that Grancich threatened the witness in violation of 18 U.S.C. § 1510, but Grancich was not charged with a substantive violation of that statute. The government claims that Martinez tried to ruin the witness' business. For these efforts Martinez was charged and found guilty of a substantive violation of 18 U.S.C. § 1503; but he was acquitted on the conspiracy charge. The jury thus could not have considered these acts by Martinez to have been in furtherance of the Count 2 conspiracy. Moreover, because the witness in question was a partner in Pronto, he had much testimony to offer about the plan to extort payments from other unloading companies, but none to offer about extortion of the meat packers.[14] Silencing such a witness might arguably be in furtherance of the Count 1 conspiracy, but hardly of the Count 2 conspiracy.

The government's use of the acts relating to obstruction of justice is subject to another objection. There is no evidence that the original Count 2 conspiracy, if it existed, included a plan to obstruct justice. The government claims that the jury could have inferred that a coverup was a part of this alleged conspiracy.[15] However, the Supreme Court has condemned the use of an inferred coverup conspiracy to extend a conspirator's period of liability. *Grunewald v. United States,* 353 U.S. 391, 77 S.Ct. 963, 1 L.Ed.2d 931 (1957).[16]

For the foregoing reasons, we conclude that there was insufficient evidence as a matter of law to support the convictions of Galea, Grancich, Jayich, and Macht

Adcock, 487 F.2d 637, 639 (6th Cir. 1973); United States v. Noah, 475 F.2d 688, 693 (9th Cir. 1973); United States v. Tanner, 471 F.2d 128, 141 (7th Cir. 1972).

**14.** Tr. 288–289; Brief of Appellee United States at 25.

**15.** Brief of Appellee United States at 50.

**16.** *See* Krulewitch v. United States, 336 U.S. 440, 69 S.Ct. 716, 93 L.Ed. 790 (1949).

under Count 2 of the June 29, 1972, indictment.

## THE CONDUCT OF THE TRIAL

ISSUES I and II:

### RULINGS ON MOTIONS DIRECTED TO INDICTMENT

Motions for severance are not unusual when multiple defendants are charged variously in multiple counts in the same indictment. When one or more conspiracy counts are joined with one or more substantive counts, the indictment should be, and usually is, examined carefully by the trial judge to determine whether or not justice requires a separate trial as to any defendant or as to any count. The record reveals that the trial judge in this case did make such an examination and determination and denied the motions for separate trials.

■ The granting or denial of a severance under Rule 14, Fed.R.Crim.P., is a matter within the trial court's discretion and reversal is appropriate only if abuse of that discretion has been shown. *Schaffer v. United States,* 362 U.S. 511, 80 S.Ct. 945, 4 L.Ed.2d 921 (1960); *Parker v. United States,* 404 F.2d 1193 (9th Cir. 1968), *cert. denied,* 394 U.S. 1004, 89 S.Ct. 1602, 22 L.Ed.2d 782 (1969).

The test is whether a joint trial was so prejudicial to a defendant as to require the exercise of the trial judge's discretion in only one way, that is, by ordering a separate trial. *United States v. Thomas,* 453 F.2d 141 (9th Cir. 1971), *cert. denied,* 405 U.S. 1069, 92 S.Ct. 1516, 31 L.Ed.2d 801 (1972).

■ The burden of demonstrating prejudice is a difficult one, and the ruling of the trial judge will rarely be disturbed on review. *Tillman v. United States,* 406 F.2d 930, 934 (5th Cir. 1969), citing 8 J. Moore, Federal Practice ¶ 14.-02[1] (2d ed. 1968); *United States v. De-*

*Sapio,* 435 F.2d 272 (2d Cir. 1970). The defendant must show more than the fact that a separate trial might offer him a better chance of acquittal. *Tillman, supra.*

■ The ultimate question is whether under all the circumstances of the particular case, as a practical matter, it is within the capacity of the jurors to follow the court's admonitory instructions and accordingly to collate and appraise the independent evidence against each defendant solely upon that defendant's own acts, statements and conduct. *Peterson v. United States,* 344 F.2d 419 (5th Cir. 1965) citing with approval *United States v. Kahaner,* 203 F.Supp. 78 (S.D.N.Y.1962), *aff'd,* 317 F.2d 459 (2d Cir. 1963), *cert. denied,* 375 U.S. 836, 84 S.Ct. 74, 11 L.Ed.2d 65 (1963).

■ Appellants do not, and could not successfully, claim that there is a misjoinder of offenses or defendants under Rule 8, Fed.R.Crim.P. All appellants were alleged to have participated in the same underlying pattern of racketeering. The factual issues were not complex.

There is no problem here of a co-defendant's extra-judicial statement, as in *Bruton v. United States,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968).

The jury did in fact distinguish among the defendants, finding some not guilty, others not guilty of one or more offenses but guilty of others.

■ Appellants have failed to demonstrate any prejudice that would outweigh the benefit afforded to efficient judicial administration by a single trial. *See United States v. Garrison,* 348 F.Supp. 1112 (E.D.La.1972).

■ The argument for striking "surplusage" from the indictment is groundless. Appellants' interpretation of the meaning and effect of the allegations in question is not reasonable.[17]

---

17. Appellants sought to strike lines 1–5 on page 3 and paragraphs (f) and (g) on page 5 of the June indictment. These allegations are part of Count 1 and read as follows:

It was a part of the said conspiracy that the defendants would, through harassments and threats of economic loss, intimidate various meat packers and other related businesses for purposes of extorting, receiving and accepting money and other things of value. And among the overt acts alleged, as criminal violations:

The language in question properly set out legal essentials of the charge. *See United States v. Root,* 366 F.2d 377 (9th Cir. 1966), *cert. denied,* 386 U.S. 912, 87 S.Ct. 861, 17 L.Ed.2d 784 (1967). That the jury was not confused was demonstrated by the not guilty verdict returned as to Martinez, who is the person named in paragraph (g) of Count 1 as having used threats against a grand jury witness. The same jury found Martinez guilty of the substantive offense of obstruction of justice.

## ISSUES IV, V and VII:

### RULINGS ON ADMISSION AND EXCLUSION OF EVIDENCE

Appellants' dissatisfaction with the trial judge's rulings on the admission and exclusion of evidence is unjustified.

■ Appellants put forth the proposition that in a jury trial of a federal indictment charging federal offenses in a federal court in California, California law on admission and exclusion of evidence is applicable as Congress has not adopted the proposed Federal Rules of Evidence.[18] Whatever the applicable principles may be under Fed.R.Civ.P. 43(a), the plain language of Fed.R. Crim.P. 26 states:

. . . The admissibility of evidence and the competency and privileges of witnesses shall be governed, except when an act of Congress or these rules otherwise provide, by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience.

*See Funk v. United States,* 290 U.S. 371, 54 S.Ct. 212, 78 L.Ed. 369 (1933); *Wolfle v. United States,* 291 U.S. 7, 54 S.Ct. 279, 78 L.Ed. 617 (1934); *United States v. Woodall,* 438 F.2d 1317 (5th Cir. 1970) (*en banc*), *cert. denied,* 403 U.S. 933, 91 S.Ct. 2262, 29 L.Ed.2d 712.[19] We have nevertheless, reviewed the specific rulings cited by appellants and find nothing serious enough to require consideration as a basis for reversal.

■ Evidence as to acts occurring prior to October 15, 1970, in support of the conspiracy charges was clearly proper as a matter of evidentiary law.[20] *See United States v. Pauldino,* 443 F.2d 1108 (10th Cir. 1971), *cert. denied,* 404 U.S. 882, 94 S.Ct. 204, 30 L.Ed.2d 163 (1971).

(f) On or about the nineteenth of May 1972, the defendant Mike M. Grancich, by misrepresentation and intimidation willfully endeavored to delay and prevent the communication of information relative to violations of the above criminal offenses by Robert Dougherty to federal criminal investigators, in violation of 18 U.S.C. § 1503.

(g) On or about the twenty-six day of May 1972, the defendant Frank Martinez did willfully and knowingly corruptly endeavor to influence Robert Dougherty, known to said defendant to have been a witness before a federal grand jury convened and sitting in the Central District of California, in that defendant Frank Martinez threatened to impose reprisals upon the said Robert Dougherty should the said Robert Dougherty testify against the defendant Mike M. Grancich at any forthcoming trial, in violation of 18 U.S.C. § 1510.
Appellants Campanale and Matthews read these allegations as imputing to them the use of violence and an agreement to obstruct jus-

tice. They admit that "in form the Appellants were *excluded* from evidence of violence." Opening Brief for Appellants Campanale and Matthews at 19. It is hornbook law that co-conspirators need not agree to the overt acts of other co-conspirators, only that the overt acts must be in furtherance of the conspiracy. *See* Blumenthal v. United States, 158 F.2d 883 (9th Cir. 1947), *aff'd* 332 U.S. 539, 68 S.Ct. 248, 92 L.Ed. 154 (1947).

**18.** Opening Brief for Appellants Campanale and Matthews at 37 n. 1. Federal Rules of Evidence were adopted by Act of January 2, 1975, Pub.L. 93–595, 88 Stat. 1926, effective "on the one hundred and eightieth day beginning after the enactment of this Act."

**19.** Appellants cite no California cases and only one federal case to support their evidentiary complaints.

**20.** See below as to the constitutionality of the Organized Crime Control Act of 1970.

ISSUES X and XI:

## TRIAL JUDGE'S BIAS AND PROSECUTORIAL MISCONDUCT

Appellants attempt to bring the trial judge's actions within the principles of *Mayberry v. Pennsylvania*, 400 U.S. 455, 91 S.Ct. 499, 27 L.Ed.2d 532 (1971), *reaffirming Offutt v. United States*, 348 U.S. 11, 75 S.Ct. 11, 99 L.Ed. 11 (1954), and to bring the prosecuting attorney's actions within the principles of *Berger v. United States*, 295 U.S. 78, 55 S.Ct. 629, 79 L.Ed. 1314 (1935).

 The actions of the trial judge which are said to show reversible bias and partiality are set forth in Appendix A to the Opening Brief of Appellants Grancich et al.[21] Most of the itemizations relate either to evidentiary rulings unfavorable to the defense or to questionings of witnesses by the judge or to exchanges between judge and counsel in which the judge appeared to be impatient or annoyed. We have reviewed the record from the point of view of the overall impact of the judge's conduct. We conclude that appellants' characterization of the situation is overly dramatic.

Many of appellants' itemizations relate to the picketing involving Ruchti Transport Co. Yet those charged with illegal picketing for personal profit were found not guilty.[22] In other areas, the trial judge's questioning of witnesses was "not so egregious as substantially to prejudice the appellant[s], especially in light of the overwhelming evidence against" them. *Cf. United States v. Tramontana*, 460 F.2d 464 (2d Cir. 1972).

Appellants cite as the "most unbelievable event in the entire trial" the expectation by the trial judge that the defense would proceed as soon as the prosecution rested.[23] The argument seems to be that the defense was forced to proceed at a time when it was not reasonable to so require with the result that appellants were denied a fair trial.[24] Assuming that under some circumstances the tempo of a trial might result in prejudice to the defense, the record here fails to sustain appellants' claims of improper judicial action.[25]

Appellants claim to have been surprised that the government rested its case Friday morning after two and one half days of trial. Two of defense counsel proceeded with their opening statements under protest, claiming not to be ready.[26] Yet several witnesses had been subpoenaed by the defense and were available to testify, and in fact the defense put on ten witnesses between 2:00 p. m. and 5:30 p. m. when court was adjourned until Monday morning at 9:30 a. m.

 The specifics of the claimed prosecutorial misconduct are supposedly set forth in Appendix B to the Opening Brief of Appellants Grancich et al. The lack of anything concrete in this one

---

21. Appellants rely in part on United States v. Ryan, 455 F.2d 728 (9th Cir. 1972), as raising an inference that the trial judge in this case has previously been criticized for improper conduct of a trial. That case falls far short of demonstrating "this Court's past efforts to deter" the trial judge from "egregious errors" of the sort complained of by appellants.

22. Count 8: Galea, Jayich, Macht, Rico, Santana,
 Count 9: Chacon, Macht, Rico.

23. Opening Brief of Appellants Grancich et al. at 15A.

24. The complaint seems misplaced as a supposed example of *Mayberry* or *Offutt* judicial misconduct. Appellants imply, without any justification, some sort of concerted action by judge and prosecutor.

25. Appellants' overly dramatic recitation of selected events cast doubts on the sincerity of the specification of this issue.

26. Opening statements on behalf of defendants were reserved after the opening statement on behalf of the government. Far from being pressured into early opening statements, appellants' counsel had an additional three days to prepare.

page appendix leaves this court nothing upon which to rule.[27]

Appellants were not denied a fair trial.

ISSUE VI:

### INSTRUCTIONS TO THE JURY

Appellants' grounds for reversal because of the alleged prejudice arising from a joint trial included the argument that even if prejudicial confusion could be avoided by appropriate instructions, necessary cautionary instructions were in fact not given.[28]

■ Instructions are not a substitute for argument to the jury. If the judge fairly instructs the jury as to applicable principles of law so as to allow counsel on each side sufficient latitude to argue what he considers to be key points in his case, the trial judge has performed his duty. It is neither required nor appropriate for the judge to accentuate any particular legal principle.

Nevertheless, in light of the disposition herein of the Count 2 conspiracy charge, these arguments become academic.

■ Appellants place special emphasis on the refusal of the judge to give cautionary instructions on the statements of co-conspirators at the time evidence was admitted. This subject was covered at the conclusion of the trial. Tr. Vol. A31. There was no prejudicial error in the judge's failure to give such an instruction also on other occasions during the trial.[29]

■ Other claimed errors relate to the refusal of the judge to give certain specific instructions requested by appellants.[30] The matters requested were adequately covered in the instructions actually given.

### THE SUFFICIENCY OF THE EVIDENCE (OTHER THAN THE COUNT 2 CONSPIRACY)

ISSUES III and XII:

### DENIAL OF MOTIONS FOR JUDGMENTS OF ACQUITTAL

Appellants argue that the evidence adduced was not sufficient to sustain the verdicts.[31] The trial judge agreed as to defendants Chacon and Rico. We agree as to Appellants Jayich and Macht and

---

27. See n. 18. The general claim is set forth in the following sentence:

. . . to elaborate at length upon the Government's synchronized collusion with the trial court to present whimsical objections to valid and badly needed testimony by the defense, to itemize the efforts made by the prosecution to mislead the court or join it in attempting to rule inadmissible and keep from the jury the vitals of the defense case, and the unequalled effort by the government to represent that it was still presenting its case and upon entry into the courtroom smugly rest with a cheshire grin, would require the writing of a textbook.

28. Appellants claim that the trial judge "did not instruct the Jury, insofar as we can determine, on the elements of multiple conspiracy, nor delineate, in any manner, the distinction between Alleged Conspiracy I and Alleged Conspiracy II" [Opening Brief for Appellants Campanale and Matthews at 42] and again that at "the end of the trial the Judge explained the general rules on conspiracy but did *not* instruct the jury to separate the evidence in Count One . . . from Count Two . . . ." [Closing Brief for Appellants Campanale and Matthews at 19].

29. Appellants claim that the "Court refused Appellants' request for such instruction, on the ground that it would be given at the end of the trial." The implication is that the request was made with respect to the testimony of Ruchti and Dougherty at the time that they testified for the government. We have examined the transcript of the testimony of these two witnesses and have been unable to find any timely request by any defense counsel for a cautionary instruction as to the testimony of a co-conspirator. A reference to the page and line of the transcript where this request appears would have been helpful.

30. Devitt and Blackmar § 11.14, § 12.02 to § 12.04, § 62.04 to § 62.09; and certain special instructions. Opening Brief for Appellants Companale and Matthews at 43. But the judge did give § 62.09 and § 12.04 (except for the last sentence) *in haec verba.*

31. Other grounds for the motions for judgment of acquittal are discussed below. As to the Count 2 conspiracy, see the discussion earlier in this opinion.

as to the Count 2 conspiracy charge generally. As to the other defendants and counts, the evidence was clearly sufficient.

Witnesses for the government gave evidence supporting all of the essential elements of the charges. The defense was either to explain away the damaging evidence as relating to non-criminal activities, or to contradict the government's witnesses. For example, witness Dougherty testified to payments to defendant Galea in cash extorted by Galea from a company with which Dougherty was associated. Galea denied receiving any such payments.

█ Appellants concentrate on the evidence relating to the conspiracy charges. As already stated, we agree that the evidence was insufficient to support the Count 2 conspiracy convictions. Galea and Grancich from among the union officials and Campanale and Matthews from the corporate members of Pronto were found guilty of the Count 1 conspiracy, and the testimony of Dougherty alone, if believed by the jury, would support that charge.

## THE ORGANIZED CRIME CONTROL ACT OF 1970

## ISSUES VIII and IX:

### INTERPRETATION AND CONSTITUTIONALITY

Much of appellants' arguments relating to evidentiary rulings and the sufficiency of the evidence revolve about the interpretation and constitutionality of the Organized Crime Control Act of 1970.

Appellants contend that the statute requires a showing that those charged thereunder are engaged in "organized crime," that the statute is vague and ambiguous and does not adequately describe the offenses that are prosecuted, that the statute is not intended to apply to acts occurring prior to its effective date of October 15, 1970, and that if so interpreted the statute is *ex post facto* legislation and therefore unconstitutional.

█ There is no doubt that Congress was concerned with organized crime in passing this amendment to the Hobbs Act. The official short title of the statute evidences this concern. But quite obviously Congress focused on some of the kinds of activities by which individuals and associations engaged in organized crime maintained their income or influence. The statute, 18 U.S.C. § 1962, makes unlawful such activities no matter who engages therein.

While the prohibitions of this section extend to "any person," which includes "any individual or entity capable of holding a legal or beneficial interest in property" (18 U.S.C. § 1961(3)), there are overtones of involvement in organized crime in the several subsections.[32] Subsection (a) refers to "any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity or through the collection of an unlawful debt in which such person has participated as a principal." Subsections (b) and (c) require the prohibited activity to be accomplished "through a pattern of racketeering activity or through collection of an unlawful debt". The two conspiracies charged here pursuant to subsection (d) were alleged to be for the purpose of violating subsection (c). Thus, it was a part of the government's proof that each conspiracy

---

**32.** As stated in the report to the Senate of the Senate Judiciary Committee on S. 30, the proposed Organized Crime Control Act of 1970:

The concept of "pattern" is essential to the operation of the statute. One isolated "racketeering activity" was thought insufficient to trigger the remedies provided under the proposed chapter, largely because the net would be too large and the remedies disproportionate to the gravity of the offense. The target of title IX is thus not sporadic activity. The infiltration of legitimate business normally requires more than one "racketeering activity" and the threat of continuing activity to be effective. It is this factor of continuity plus relationship which combines to produce a pattern. S.Rep. 91–617, 91st Cong., 1st Sess. p. 158.

was formed for the purpose of conducting or participating, directly or indirectly, in the conduct of Local 626's or Pronto's affairs "through a pattern of racketeering activity."[33]

By definition, also, a "pattern of racketeering activity" requires "at least two acts of racketeering activity, one of which occurred after the effective date of this chapter and the last of which occurred within ten years (excluding any period of imprisonment) after the commission of a prior act of racketeering activity." 18 U.S.C. § 1961(5).

The words of the statute are general. They contain no restriction to particular persons. *See United States v. Roselli,* 432 F.2d 879 (9th Cir. 1970), *cert. denied,* 401 U.S. 924, 91 S.Ct. 883, 27 L.Ed.2d 828 (1971).

For similar reasons, appellants' contention that the statute does not apply to a "small business enterprise" such as Pronto is without merit. *See United States v. Pauldino,* 443 F.2d 1108 (10th Cir. 1971).

With respect to the argument that this statute is vague and ambiguous, it is true that, if undefined, terms such as "pattern of racketeering activity" would be unmanageable. Any ambiguity is cured by 18 U.S.C. § 1961, which defines "racketeering activity" with reference to specific offenses, "pattern of racketeering activity" with reference to a definite number of acts of "racketeering activity" within specified time periods, and "enterprise" and "person" with standard language of established meaning. The concept of affecting interstate or foreign commerce is so well imbedded in federal law as not to mislead anyone

who desires to conform his conduct to the requirements of this law. *See United States v. Kramer,* 355 F.2d 891 (7th Cir. 1966), *cert. denied in part and granted in part,* 384 U.S. 100, 86 S.Ct. 1366, 16 L.Ed.2d 396 (1966); *Carbo v. United States,* 314 F.2d 718 (9th Cir. 1963), *cert. denied,* 377 U.S. 953, 84 S.Ct. 1626, 12 L.Ed.2d 498 (1964).

As a matter of statutory interpretation, the statute clearly relies upon acts which might have taken place prior to the effective date of the statute of October 15, 1970. The Senate Judiciary Committee in its report to the Senate on this proposed law stated:

> One act in the pattern must be engaged in after the effective date of the legislation. This avoids the prohibition against *ex post facto laws,* and bills of attainder. Anyone who has engaged in the prohibited activities before the effective date of the legislation is on prior notice that only one further act may trigger the increased penalties and new remedies of this chapter. S.Rept. 91–617, 91st Cong., 1st Sess. p. 158.

The speculation that by relying to any extent on acts prior to its effective date the statute risks contravening the prohibitions of U.S.Const. art. I, § 9, cl. 3, against the passage of bills of attainder or *ex post facto* laws is not unreasonable. The same thought occurred to Congress, and the statute was drafted so as to avoid this possible unconstitutionality.[34] This was done by defining "pattern of racketeering activity" to require one act of racketeering activity after the effective date of the chapter. 18 U.S.C. § 1961(5).

---

**33.** An element of each conspiracy offense which was amply supported by the evidence adduced as to the Count 1 conspiracy but not as to the Count 2 conspiracy.

**34.** As stated in the Senate Judiciary Committee's report to the Senate on this proposed statute:

> The concept "pattern" is thought to provide no due process constitutional barrier to criminal sanctions, as a "racketeering activi-

ty," defined above, must be an act in itself subject to criminal sanction and any proscribed act in the pattern must violate an independent statute. *See United States v. Nardello,* 393 U.S. 286, 89 S.Ct. 534, 21 L.Ed.2d 487 (1969).

> One act in the pattern must be engaged in after the effective date of the legislation. This avoids the prohibition against ex post facto laws, and bills of attainder. . . . S.Rep. 91–617, 91st Cong., 1st Sess. p. 158.

The success of this approach in complying with constitutional constraints has been judicially acknowledged in other contexts.

In *United States v. Wechsler,* 392 F.2d 344 (4th Cir. 1968), *cert. denied,* 392 U.S. 932, 88 S.Ct. 2283, 20 L.Ed.2d 1389 (1968), acts carrying out the objectives of a bribe were held violative of 18 U.S.C. § 1952 even though the statute was enacted after the bribe was tendered and received but before the performance of the act for which the bribe was given. The same statute was applied to a federally innocent plan formed a year or more before enactment of the law which converted the plan into an unlawful conspiracy, but only if acts in furtherance of the plan and in affirmance of it were committed by the defendants thereafter. *United States v. Kubacki,* 237 F.Supp. 638 (E.D.Pa.1965.) In *United States v. Garrison,* 348 F.Supp. 1112 (E.D.La.1972), the court relied on these authorities to conclude that 18 U.S.C. § 1511, another section enacted by the Organized Crime Control Act of 1970, had no *ex post facto* infirmity although acts prior to the effective date of the statute were used in the indictment and in evidence to show the existence of a continuing conspiracy. It is well established that a statute increasing a penalty with respect to a criminal conspiracy which commenced prior to, but was continued beyond the effective date of the statute, is not *ex post facto* as to that crime. *Leyvas v. United States,* 371 F.2d 714 (9th Cir. 1967); *United States v. Borelli,* 336 F.2d 376 (2d Cir. 1964). *Cf. United States v. Witt,* 215 F.2d 580 (2d Cir. 1954), *cert. denied,* 348 U.S. 887, 75 S.Ct. 207, 99 L.Ed. 697 (1954).[35]

As stated by the government, appellants were not convicted of conspiracy under 18 U.S.C. § 1962(d) for acts committed prior to October 15, 1970; rather they were convicted for having performed post-October 15, 1970, acts in furtherance of their continued racketeering conspiracy after being put on notice that these subsequent acts would combine with prior racketeering acts to produce the racketeering pattern against which this section is directed. Brief for the United States at 39.[36]

## INDICTMENT No. 11933–CD
### ISSUE XIII:
### APPLICABILITY OF 18 U.S.C. § 1503

Appellants Galea and Martinez argue that their convictions of obstruction of justice in violation of 18 U.S.C. § 1503 under Indictment No. 11933–CD should be set aside because the statute has no application to the proceedings of a grand jury and because bringing about a business loss is not an injury to property within the meaning of the statute.[37]

**35.** Appellants do not cite any authorities in support of their argument other than U.S. Const. art. I, § 9 cl. 3.

**36.** The acts constituting racketeering activity must themselves be criminal offenses. 18 U.S.C. § 1961(1). The penalties imposed under 18 U.S.C. § 1962 are no greater than the penalties imposed for many of the substantive offenses constituting racketeering activity for purposes of 18 U.S.C. Chap. 96.

**37.** 718 U.S.C. § 1503 reads as follows:

Whoever corruptly, or by threats or force, or by any threatening letter or communication, endeavors to influence, intimidate, or impede any witness, in any court of the United States or before any United States magistrate or other committing magistrate, or any grand or petit juror, or officer in or of any court of the United States, or officer who may be serving at any examination or other proceeding before any United States magistrate or committing magistrate, in the discharge of his duty, or injures any party or witness in his person or property on account of his attending or having attended such court or examination before such officer, commissioner, or other committing magistrate, or on account of his testifying or having testified to any matter pending therein, or injures any such grand or petit juror in his person or property on account of any verdict or indictment assented to by him, or on account of his being or having been such juror, or injures any such officer, magistrate, or other committing magistrate in his person or property on account of the performance of his official duties, or corruptly or by threats of force, or by any threatening letter or communication, influences, obstructs, or impedes, or endeavors to influence, obstruct, or impede, the due administration of justice, shall be fined not more than $5,000 or imprisoned not more than five years, or both.

Appellants rely on *United States v. Ryan,* 455 F.2d 728 (9th Cir. 1972) for the proposition that federal grand jury witnesses are not within the class of persons protected by 18 U.S.C. § 1503. But *Ryan* is an entirely different case. There the offense was alleged to be destruction or alteration of records called for by a grand jury, yet there was no showing that the records were relevant to the grand jury's inquiry. The court also found that specific intent to impede the administration of justice is an essential element of the offense which had not been established beyond a reasonable doubt.

■■■■■ The court in *Ryan* assumed the applicability of 18 U.S.C. § 1503 to grand jury proceedings, as did the court in *Shimon v. United States,* 122 U.S.App. D.C. 152, 352 F.2d 449 (1965), in *United States v. Kahn,* 366 F.2d 259 (2d Cir. 1966), *cert. denied,* 385 U.S. 948, 87 S.Ct. 324, 17 L.Ed.2d 226 (1966), and in *United States v. Bradwell,* 388 F.2d 619 (2d Cir. 1968), *cert. denied,* 393 U.S. 867, 89 S.Ct. 152, 21 L.Ed.2d 135 (1968). The grand jury is an appendage of the court. *See Brown v. United States,* 359 U.S. 41, 79 S.Ct. 539, 3 L.Ed.2d 609 (1959) (reversed on other grounds in *Harris v. United States,* 382 U.S. 162, 86 S.Ct. 352, 15 L.Ed.2d 240 (1965). The appellants' interpretation of the statute is at best somewhat strained. In our opinion, the statute clearly protects witnesses before grand juries.

The argument that injury to a witness "in his person or property" does not include forcing the witness out of his business is without merit. *Cf. Miller v. Hulsey,* 347 F.Supp. 192 (E.D.Ark.1972).

## CONCLUSION

Judgments as to appellants Galea, Grancich, Jayich, and Macht, with respect to the Count 2 conspiracy are reversed.

Judgments as to appellants Campanale, Galea, Grancich, Martinez, and Matthews with respect to other counts are affirmed.