**Joan DAKIS, Individually and on Behalf of the DAKIS PENSION PLAN, Plaintiff,**

**v.**

**Philip CHAPMAN, Morgan Stanley & Co., Inc., and Davis Skaggs & Co., Inc., Defendants.**

**No. C82–6814 SW.**

United States District Court,
N.D. California.

Sept. 14, 1983.

Jay R. Martin, Eric G. Wallis, Crosby, Heafey, Roach & May, P.C., Oakland, Cal., for defendants Davis Skaggs & Co., Inc. and Philip Chapman.

Robert E. Graham, Fabian, Graham & Englese, San Francisco, Cal., for plaintiff Joan Dakis.

## ORDER AND MEMORANDUM OF LAW

SPENCER WILLIAMS, District Judge.

Upon consideration of oral argument entertained on August 19, 1983, and briefs submitted in support and opposition to defendants' Davis Skaggs & Co., Inc., Morgan Stanley and Philip Chapman motion to dismiss Count 2 of plaintiff's first amended complaint, IT IS HEREBY ORDERED THAT defendants' motion to dismiss is GRANTED, with leave for plaintiff to amend her complaint in the manner described below. A brief discussion of the questions presented by defendants' motion follows.

FACTS:

The essential facts surrounding the instant complaint are largely undisputed. In April, 1974, Michael Dakis ("plaintiff's decedent") opened two discretionary margin security trading accounts with Morgan Stanley, the firm with whom Philip Chapman was employed at the time. One account was a personal account in husband and wife's names. The other was an investment for decedent's company's pension/profit sharing plan, of which plaintiff and decedent were principal beneficiaries.

In early 1980, Chapman left Morgan Stanley, and joined Davis Skaggs. He sought, and obtained, decedent's permission to transfer his accounts over to Davis Skaggs, and maintain the same pattern of investment as he had in the past on his behalf. Although the essence of the complaint at bar focuses upon the decedent's level of sophistication, and consequently the degree to which he reasonably relied upon Chapman's advice and investment selections, we here assume that Chapman, notwithstanding his apparent success in business and subscription to the Wall Street Journal, was a neophyte in the market. By retaining Chapman as his trusted broker, he did little more than engage Chapman in occasional banter about the market, and relied heavily upon his counsel in effecting his trades.

After decedent's sudden death in October, 1981, plaintiff discovered that the track record of the two accounts had been dismal at best. In addition to losing a substantial portion of invested capital, the trading activity had generated $91,000 excess indebtedness from margin calls and commissions to Chapman and the firms. Plaintiff now sues defendants for violations of the Securities Exchange Act of 1934 (SEA) sections 10(b) and 20 (15 U.S.C. §§ 78j(b) and 78t) and Rule 10(b)(5) (claim 1), the Racketeer Influenced and Corrupt Organizations Act ("RICO") (18 U.S.C. § 1961 et seq.) (claim 2), state securities law (claim 3), and common law fraud and intentional infliction of emotional distress (claims 4–6). We have previously stayed and severed claims 3–6 for arbitration, as contractually provided by the parties. *Minute Order*, March 2, 1983.

LAW:

By this motion, defendants seek dismissal of plaintiff's RICO claim for treble damages and reasonable attorney's fees. Although the case law on the appropriate purpose and scope of civil RICO is somewhat murky, our review of the holdings in more carefully researched district court

opinions, as well as the dicta of the many opinions to address the more established criminal aspect of RICO, convinces us that plaintiff could not state a claim of action against Morgan Stanley or Davis Skaggs, on the alleged facts, that would be cognizable under the statute. As regards Chapman, although we hold that plaintiff's RICO claim is deficient in several respects, we would grant her leave to amend the complaint, if she can, to allege facts sufficient to make out a RICO claim against Chapman.

We assume, for the purposes of this motion, that Chapman and the two brokerage firms with whom he was affiliated while trading on the Dakis' behalf violated, *inter alia*, the SECA, Rule 10(b)(5), by "churning" and other activities to maximize commissions, instead of evaluating the risk and return for the accounts. The issue squarely before us is whether two violations of federal and corresponding state securities laws automatically subject the offenders to simultaneous RICO liability. We conclude that there is no such identity of liability; although overlapping to some extent, RICO liability is both subtly broader and narrower than that of traditional securities law.

RICO is one of the twelve titles of the Organized Crime Control Act of 1970, Pub.L. No. 91–452, 84 Stat. 922 (1970) ("OCCA"). OCCA, and RICO specifically, were designed to halt organized crime's infiltration of and, to the extent possible, to disgorge past profits of its forays into legitimate business. *Statement of Findings and Purpose of OCCA*, 84 Stat. 923. RICO proscribes the investment in, gaining control of, or association with an "enterprise" through a "pattern of racketeering activity." 18 U.S.C. § 1962(a)–(c). Congress provides both for criminal enforcement of RICO, as well as attractive civil remedies to victims, to encourage its prosecution.

By its terms, RICO provides a laundry list of offenses, including, *inter alia*, securities fraud, which constitute "racketeering activities". 18 U.S.C. § 1961(1)(D). It also defines "enterprise" as "any individual,

partnership, corporation, association (legal or in fact)." 18 U.S.C. § 1961(4). A "pattern of racketeering activity" is defined as (1) at least two acts of racketeering activity; (2) one of which occurred after 1970; and, (3) the last of which occurred within ten years of a prior act. 18 U.S.C. § 1961(5).

RICO outlaws a principal's or participant's use of income, derived from racketeering activity, to obtain an interest in an enterprise engaged in interstate commerce, (18 U.S.C. § 1962(a) and (b)), or to acquire assets engaged in such a racketeering enterprise. Additionally, it proscribes both the infiltration of a legitimate enterprise or the association by any person with a criminal enterprise that has committed the requisite predicate acts of racketeering. 18 U.S.C. § 1962(c).

The defendants' motion is addressed to the deficiencies of plaintiff's claim of injury from defendant Chapman's "churning" the accounts and defendants Morgan Stanley and Davis Skaggs' negligence in monitoring the trading activity by their internal guidelines. We note that, although there is some ambiguity in the case law as to the precise dimensions of civil RICO, the overwhelming authority is to restrict the broad remedial provisions of RICO to injuries "by reason of" a violation of § 1962, not merely the damages from two predicate acts of securities fraud.

*Plaintiff's complaint against the brokerage firms:*

Plaintiff's RICO claim against the firms is doomed for at least two reasons. First, as in *Parnes v. Heinold Commodities, Inc.*, 548 F.Supp. 20, 23 (N.D.Ill.1982), the plaintiff does not, nor could she on the facts as stated, allege more than respondeat superior liability on either firms' part in any security violation committed by Chapman. Second, even were her complaint to allege sufficient complicity by either, or both, firms to state a securities violation on their parts, more than mere commission of these predicate acts need be pled.

To succeed in casting her complaint within civil RICO to snare the firms based upon

predicate acts of securities fraud, she must establish that they attempted to gain control of her investment enterprise (infiltration), or injured her property or interests, in order to reduce her ability to invest (competitive injury) as a result of a pattern of their racketeering activity. It is apparent from the face of the plaintiff's complaint that she seeks us to make the "quantum leap" from securities violations to RICO, by Chapman, a "lower-level corporate executive() acting without corporate sanction" by either firm, without establishing either infiltration or competitive injury. This would be an inappropriate application of RICO. *Parnes, supra,* at 23.

RICO draws a significant distinction between the aggressor enterprise, legitimate or illegitimate (*U.S. v. Turkette,* 452 U.S. 576, 587, 101 S.Ct. 2524, 2530, 69 L.Ed.2d 246 (1981)), and the infiltrated or injured enterprise. Here, the firms can only be characterized as "conduits" through which Chapman conducted his churning—themselves victims of an ongoing rule infraction by an employee. Although, as recently held in *U.S. v. Benny,* 559 F.Supp. 264 (N.D.Cal.1983), it isn't necessary that the aggressor enterprise be formally distinct from the "responsible person(s)" (§ 1962(c)), it is necessary that whomever is to be held liable under RICO has him(it)self been actively engaged in the pattern of racketeering. *See Parnes, supra,* at 24, esp. n. 9. As another court has stated, it would be an anomalous result indeed if, because Chapman had misused his authority to trade the accounts, and had actually violated internal guidelines of the firms by so doing, the firms were nonetheless deemed "aggressor" enterprises liable under RICO. At most plaintiff's allegations portray the firms as essentially legitimate businesses which permitted themselves to act as the "conduits" for Chapman's securities violations.

These allegations may sufficiently state a claim under the securities laws against the firms and broker; however, plaintiff does not allege either firm "infiltrated" her enterprise, or that either firm's participation in Chapman's misdeeds was calculated

to, or did, render the firms in better competitive position. Just the opposite seems true; the firms, as well as the plaintiff, suffered direct economic harm from Chapman's deeds: the loss of her two accounts, as well as any liability to which they are held under the securities laws for plaintiff's action here. Interestingly, we suggest that the firms, more than the plaintiff, may be proper plaintiffs of a RICO action against Chapman; under the present allegations, the firms would appear to satisfy the three-pronged standing requirement of (1) being otherwise legitimate business enterprises; (2) which have been either metaphysically infiltrated or competitively injured; (3) by another's commission of two predicate offenses within a period of ten years. *Cf., Moss v. Morgan Stanley & Co., Inc.,* 553 F.Supp. 1347, 1362–63 (S.D. N.Y.1983)

By this distinction, we do not denigrate the seriousness of plaintiff's allegations against Chapman or the firms under the federal or state securities laws. However, it is clear to us that RICO was intended to address a different malady than she alleges occurred here. RICO was aimed at bands of marauding criminals, whose ongoing use of criminal behavior was part of their concerted "business plan" to control or eliminate otherwise legitimate commerce. *Harper v. New Japan Securities Intern'l, Inc.,* 545 F.Supp. 1002, 1006–7 (C.D.Cal.1982). Mere negligence or even recklessness by the firms in supervising trading of the plaintiff's accounts, such as is alleged here, does not allege the essence of an "independent" conspiratorial enterprise consisting of either firm and Chapman, based upon a mutual, and nefarious, gain from Chapman's illicit activities; it is to the perceived strength of organized, concerted commission of two predicate offenses with the intent to corrupt or vanquish a legitimate enterprise that RICO was addressed. *Id.; also see Bennett v. Berg,* 685 F.2d 1053, 1061–62 (8th Cir.1982), *pet. reh. granted,* (Sept. 17, 1982), for its discussion of a requirement that there be a direct relationship, forged by "racketeering

activity", between the aggressor as a corporal entity, the individual responsible for the commission of unlawful predicate acts, and the victim. *See Landmark S & L v. Rhoades, etc.*, 527 F.Supp. 206, 209 (E.D. Mich.1981).

■ We agree with plaintiff's argument that she need not establish that either Morgan Stanley or Davis Skaggs are connected in some significant manner to the Mafia, or other organized crime syndicate. To read into RICO such a "status based" requirement would be unconstitutional, as well as foolhardy. *See* 116 Cong.Rec. 35,343 (1970). In light of the Supreme Court's failure to read RICO as requiring "Mafia connections" in criminal prosecutions, this Circuit has similarly omitted proof of Mafia ties in criminal cases. *U.S. v. Campanale*, 518 F.2d 352, 363–64 (9th Cir.1975), *cert. denied*, 423 U.S. 1050, 96 S.Ct. 777, 46 L.Ed.2d 638 (1976). Although we note that, as a matter of public policy, there is a salubrious focusing of judicial resources resulting from exercise of prosecutorial discretion in criminal RICO, without analogy in civil RICO actions, by requiring that a plaintiff's injury be "by reason of" racketeering activities, instead of merely the commission of predicate offenses already unlawful, will prevent an unjustified and avoidable explosion in the civil litigation of this Statute. We discuss this standing requirement below, since it is relevant to both the firms' and Chapman's liability under RICO.

*The nature of plaintiff's injury:*

In a very straight-forward manner, plaintiff alleges that she suffered a substantial monetary loss to the value of her investment as a result of Chapman's churning of the accounts, and the firms' respective negligence in supervising his activities under their own guidelines. Although we agree that there has yet to be a comprehensive definition of the type of injuries intended to be within RICO's purview either by courts or Congress, this ambiguity seems to have been contemplated as necessary in drafting legislation effective against the imagina-

tive and chameleon-like tendencies of organized crime. *See* Statement of Findings and Purpose of OCCA, *supra.*

As a practical matter, judges can quickly discern a determinative difference between allegations of business injuries suffered by reason of industrial sabotage or guerilla tactics employed by the Teamsters in *U.S. v. Thordarson*, 646 F.2d 1323 at 1329, n. 10, and those alleged here. We can similarly distinguish the injuries to a legitimate business' interests in reaction to threats or representations by an wholly- or partially illicit enterprise, losing control over its operations or ability to engage in its business, from the monetary damages of a victim of securities violations. *Cf., Crocker National Bank v. Rockwell Intern'l Corp.*, 555 F.Supp. 47, 49 (N.D.Cal.1983). *Accord, Van Schaick v. Church of Scientology*, 535 F.Supp. 1125 (D.Mass.1982).

■ As have the other district courts which have grappled with this issue, we conclude that RICO requires a "racketeering enterprise injury": either the loss of control over an ongoing enterprise due to infiltration by use of two concerted prohibited offenses; i.e., securities or mail fraud, or a competitive injury to a legitimate enterprise by that racketeering activity. *See, e.g., Harper v. New Japan Securities Intern'l, supra.; Adair v. Hunt Int. Resources Corp.*, 526 F.Supp. 736 (N.D.Ill. 1981); *Landmark Savings, supra; Van Schaick, supra*, at 1137. We do not concur with the much discredited "antitrust-type" injury requirement (*Adair, supra*); we note that there is frequently great similarity between RICO "competitive-type" and traditional antitrust injury but, despite the fact that RICO civil remedies were intentionally patterned after those awarded in antitrust, by § 4 of the Clayton Act, RICO contains no express requirement that the plaintiff establish any of the market proof or share analysis of either the Sherman or Clayton Acts. RICO has none of the strict macro- or micro-economics requirements of antitrust.

The soundness of the analysis and result we reach here is corroborated by our belief

that Congress realized and intended to reach a slightly different and more elusive problem of organized criminal forays into the private business sector, while leaving a substantial body of statutory and case law applicable to the many predicate acts listed in § 1962 intact, and, by careful draftsmanship, achieved a distinction between the reach of criminal prosecutions by the government and a private plaintiff's recourse under RICO for quasi-punitive damages and attorney's fees. So as not to frustrate this careful scheme, we have assumed that Congress meant the statute to be viewed as an integrated whole to ascertain whether its application in any particular setting is in harmony with RICO's overall purpose, rather than parsed by ingenious litigants striving to establish facial and superficial compliance with some of its terms. *Adair, supra,* at 747, 753.

■ Perhaps the plaintiff can amend her complaint to allege that Chapman was engaged in an ongoing independent enterprise, apart from his formal employment by the two firms, that itself was fueled by profits from his securities violations, and that this enterprise depleted her investments. This would satisfy the pattern required of RICO. *Cf., U.S. v. Benny, supra; see, e.g., Moss v. Morgan Stanley, supra,* at 1359; *Kimmel v. Peterson,* 565 F.Supp. 476, CCH Fed.Sec.Rep. ¶ 99,225 (E.D.Pa.1983); *Schacht v. Brown,* 711 F.2d 1343, CCH Fed.Sec.Rep. ¶ 99,160 (7th Cir.1983).

IT IS HEREBY ORDERED THAT plaintiff's second claim be dismissed against Morgan Stanley and Davis Skaggs, without leave to amend, and against Chapman, with leave to amend within thirty days. IT IS SO ORDERED.