**UNITED STATES of America, Appellee,**

v.

**Kurt STEWART, Appellant.**

No. 88–5351.

United States Court of Appeals,
Eighth Circuit.

Submitted March 13, 1989.

Decided June 29, 1989.

Rehearing Denied Aug. 7, 1989.

Alan J. Sheppard, Fargo, N.D., for appellant.

Gary Annear, Fargo, N.D., for appellee.

Before JOHN R. GIBSON and BOWMAN, Circuit Judges, and HEANEY, Senior Circuit Judge.

JOHN R. GIBSON, Circuit Judge.

Kurt Stewart appeals his convictions for three counts of using a communications facility to commit a controlled substance

felony, in violation of 21 U.S.C. § 843(b), and one count of conspiracy to possess and deliver a controlled substance, in violation of 21 U.S.C. § 846. Stewart arranged cocaine transactions by placing calls from Denver, Colorado to Fargo, North Dakota. The receiving telephone in Fargo, however, had been equipped with "call-forwarding" capability, and was programmed to relay the calls to a number in Minnesota. The primary issue raised on appeal is whether jurisdiction and venue were proper in North Dakota. Stewart argues that the use of a call-forwarding device does not provide sufficient contact with the state of North Dakota to establish venue in that state, and that the district court [1] erred in ruling otherwise. We affirm.

The investigation into Stewart's activities began in August of 1987, with the arrest of Thomas Martinich in Minnesota. Martinich agreed to cooperate with the government, naming Stewart as his supplier. Martinich, who owed Stewart money for previously delivered cocaine, was instructed to persuade Stewart to travel to Fargo to engage in further illegal transactions. When Stewart refused to make the trip, Martinich stated that he had given the cocaine to "Dave" in Fargo, and gave Stewart a telephone number where "Dave" could be reached. "Dave" was actually Daniel Ahlquist, a Minnesota drug agent, and the telephone number was for a "cool phone" [2] at the North Dakota Drug Enforcement Unit. Ahlquist programmed the North Dakota cool phone to forward all calls to his own cool phone in Bemidji, Minnesota.

Soon afterward Stewart began telephoning Ahlquist, seeking the money that Martinich owed him. All of these calls were made to North Dakota's 701 area code, and were automatically forwarded to telephones in Minnesota's area code. Ahlquist recorded the calls, some of which involved discussions of future cocaine deals and negotiations over price. The two haggled over whether Ahlquist should go to Denver or whether Stewart should visit Fargo, and

1. The Honorable Paul Benson, United States District Judge for the District of North Dakota.

2. A "cool phone" is a telephone in police headquarters, with an unlisted number that law enforcement agents may give to suspects.

Stewart eventually agreed to send his friend, Max Schmaling, to Fargo to pick up the money and discuss future transactions. Stewart confirmed Schmaling's travel arrangements through calls that were forwarded to a Moorhead, Minnesota telephone. Audio and video surveillance was set up at the Fargo airport, and Ahlquist met Schmaling as scheduled. Schmaling made incriminating statements, was arrested, and agreed to cooperate with the government.

Stewart was later arrested in California, and indicted in North Dakota on five controlled substance violations, one of which was dismissed prior to trial. The district court denied Stewart's motion for a change of venue on the remaining charges, and a trial was held in Fargo. After the jury returned a verdict of guilty on all charges, Stewart was sentenced to a total of thirty-eight months imprisonment and three years of supervised release, as provided for by the Sentencing Guidelines. This appeal followed.

■ Stewart first renews his objections as to jurisdiction and venue. We are satisfied that venue was proper in North Dakota, so as to authorize the exercise of jurisdiction in that district. 21 U.S.C. § 843(b), relating to the use of communications facilities to further drug felonies, proscribes a continuing offense. *See Andrews v. United States*, 817 F.2d 1277, 1279 (7th Cir.), *cert. denied*, — U.S. —, 108 S.Ct. 166, 98 L.Ed.2d 120 (1987). Further, 18 U.S.C. § 3237 provides that "any offense against the United States begun in one district and completed in another, or committed in more than one district, may be inquired of and prosecuted in any district in which such offense was begun, continued, or completed." Courts have therefore interpreted section 843(b) as allowing trial in either the district where the call was placed or the district where the call was received. *See, e.g., Andrews*, 817 F.2d at 1279; *United States v. Barnes*, 681 F.2d 717, 724 (11th Cir.1982), *cert. denied sub nom., Riddle v.*

*United States*, 460 U.S. 1046, 103 S.Ct. 1447, 75 L.Ed.2d 802 (1983).

Stewart argues that venue could only have been proper in Colorado, where the calls were placed, or in Minnesota, where the calls were received, but this argument ignores the "begun, *continued*, or completed" language of section 3237. At the time he placed the calls to Ahlquist, Stewart believed that he was calling Fargo, and indeed he was. The fact that these calls were automatically forwarded from Fargo to Minnesota does not eliminate the required continued contact with North Dakota. *Cf. Barnes*, 681 F.2d at 724 (venue proper in district that defendant contacts). Since the calls constituted overt acts in furtherance of the conspiracy, venue for that charge was also proper in North Dakota. *See United States v. Moeckly*, 769 F.2d 453, 460–61 (8th Cir.1985), *cert. denied*, 476 U.S. 1104, 106 S.Ct. 1947, 90 L.Ed.2d 357 (1986). Thus, the district court acted properly in denying Stewart's motions for a change of venue.[3]

■ Stewart also argues that the government was improperly allowed to withhold an original tape recording from discovery. "Discovery matters are committed to the sound discretion of the district court and an error in administering the discovery rules is reversible only on a showing that the error was prejudicial to the substantive rights of the defendant." *United States v. Pelton*, 578 F.2d 701, 707 (8th Cir.), *cert. denied*, 439 U.S. 964, 99 S.Ct. 451, 58 L.Ed.2d 422 (1978). The tape in question here, although originally indecipherable, was corrected by another machine and was made available to both parties. It contained nothing beneficial for either side. Under these circumstances, the district court acted within its discretion in not requiring that the original tape be turned over to Stewart.

■ Next, Stewart contends that the district court erroneously refused to admit

---

**3.** Stewart did not argue on appeal as he did at post-trial that a jury instruction should have been given on the venue issue. Here his counsel stipulated that the call was placed to the telephone in North Dakota and that it was a legal question as to whether or not this was the use of a telephone facility in the district of North Dakota. *See Moeckly*, 769 F.2d at 461.

alleged inconsistent statements made by Schmaling, a government witness. Although the prior written statements were not admitted as substantive evidence, the district court did allow their use during the cross-examination of Schmaling. During that time, no direct inconsistencies were developed. In view of the fact that Stewart was given a full opportunity to develop Schmaling's credibility during cross-examination, we find no abuse of discretion.

■ Stewart further claims that an order sequestering the government's witnesses should have barred several government agents from communicating with those witnesses during the trial. The district court's sequestration order, however, specifically stated that it did not apply to government agents, and trial courts are given wide latitude in fashioning such orders. *See United States v. Shurn*, 849 F.2d 1090, 1094 (8th Cir.1988). Stewart relies on Federal Rule of Evidence 615, which does not authorize trial courts to prevent executive branch officials from conferring with their witnesses. Stewart has shown no prejudice, and we find no error.

■ Finally, Stewart argues that the new Sentencing Guidelines were improperly applied to him.[4] He alleges that the charged conspiracy began before November 1, 1987, the effective date of the Guidelines, and that he should therefore have been sentenced under the former system. Conspiracy, however, is a continuing offense, and any conspiracy that continued past November 1, 1987, as Stewart's clearly did, subjects the offender to the new Guidelines. *See United States v. White*, 869 F.2d 822, 826 (5th Cir.1989). Stewart also claims that when determining the amount of illegal drugs involved in his offenses, the district court should have considered only the "pure" controlled substance and disregarded the amount of material mixed with it. This argument is in direct conflict with the Guidelines. "[I]f any mixture of a compound contains any detectable amount of a controlled substance, the entire amount of the mixture or compound shall be considered in measuring the quantity." Fed. Sentencing Guidelines Manual § 2D1.1(a)(3) and n.* (1988); *see also United States v. Rojas*, 868 F.2d 1409, 1409–10 (5th Cir.1989). The district court correctly calculated Stewart's sentence.

We affirm the judgment of the district court.

---

**4.** Stewart's broad claim that the guidelines are unconstitutional was rejected by *United States v.* *Mistretta,* —— U.S. ——, 109 S.Ct. 647, 102 L.Ed. 2d 714 (1989).