UNITED STATES of America, Appellee,

v.

**William THARP, Appellant.**

No. 88–1829.

United States Court of Appeals,
Eighth Circuit.

Submitted April 26, 1989.

Decided Sept. 12, 1989.

Rehearing Denied Oct. 13, 1989.

As Amended Jan. 9, 1990.

Bruce Simon, Kansas City, Mo., for appellant.

Patricia McGarry, Asst. U.S. Atty., St. Louis, Mo., for appellee.

Before ARNOLD, JOHN R. GIBSON, and BOWMAN, Circuit Judges.

ARNOLD, Circuit Judge.

William Tharp appeals from the sentence imposed on him after he pleaded guilty to

conspiracy to distribute methamphetamines, in violation of 21 U.S.C. § 846, arguing that the Sentencing Guidelines should not have been applied in his case. Because we hold that the Guidelines apply to a conspiracy begun before their effective date and continuing afterwards, we affirm the judgment of the District Court.[1]

## I.

William Tharp was charged with two counts of using a communications facility to commit a controlled-substance felony, in violation of 21 U.S.C. § 843(b), and one count of conspiracy to possess and deliver a controlled substance, in violation of 21 U.S.C. § 846. After plea negotiations with the government, Tharp entered a guilty plea to the conspiracy count. The District Court sentenced him to 79 months in prison, followed by three years supervised release, as dictated by the Sentencing Guidelines.

Tharp and the government stipulated that the conspiracy to sell methamphetamines occurred between the first week in October 1987, and November 24, 1987, the day Tharp was arrested. Overt acts in furtherance of the conspiracy occurred on November 15th and 16th, when Tharp made phone calls to set up the sales. Thus, the conspiracy "straddled" the effective date of the Sentencing Guidelines, November 1, 1987.

Whether the Guidelines applied in Tharp's case was an issue before the District Court. Tharp argued the Guidelines did not apply, claiming that the government had agreed that "the offense be judged as a pre-November 1, 1987 offense." The government responded that there was no formal written plea agreement, that many options were covered in negotiations, and that the Guidelines were properly applied in the case of a continuing

offense which straddled their effective date. The District Court held the Guidelines did apply, reasoning that an agreement between the government and defendant, assuming there was one, would have no effect, since "application of the new Act for an offense committed within its provisions is mandatory, and cannot be bargained away by the parties." *United States v. Tharp*, No. 87–273 Cr. (2), slip op. at 3 (E.D.Mo. March 16, 1988). The Court made no finding on the existence of an agreement.

## II.

On appeal Tharp argues that the Sentencing Guidelines should not have been applied in his case.[2] While accepting the general proposition that conspiracy is a continuing offense, and therefore subject to any modifications in the law during the course of the conspiracy, *United States v. Giry*, 818 F.2d 120, 135 (1st Cir.), *cert. denied*, 484 U.S. 855, 108 S.Ct. 162, 98 L.Ed.2d 116 (1987), Tharp contends that the Guidelines should not have been applied to his case because he and the government agreed to treat the offense as occurring before November 1, 1987. Tharp points out that the conspiracy statute under which he was charged, 21 U.S.C. § 846, does not require an overt act, *United States v. Covos*, 872 F.2d 805 (8th Cir.1989), and so claims that his crime can fairly be considered to have been completed in October. Thus, Tharp argues, the District Court erred in holding the Guidelines were mandatory and rejecting the plea agreement.

The government responds that, although several plea options were discussed, no formal agreement was ever reached. Thus, there was no agreement to consider the conspiracy completed as of November 1, 1987, and no plea agreement for the Court to reject. As noted previously, the District Court made no finding on this question of

---

1. The Hon. Edward L. Filippine, United States District Judge for the Eastern District of Missouri.

2. Tharp's claim that the Guidelines are unconstitutional was rejected in *United States v. Mistretta*, — U.S. —, 109 S.Ct. 647, 102 L.Ed.2d 714 (1989).

fact, instead ruling that application of the Guidelines was mandatory.

■ We doubt that any such agreement was ever made. Tharp alleged that the agreement had been reached, but he never attempted to establish it by evidence, and we suspect that if the government had made such an agreement, counsel for both sides would have insisted that it be formalized in some sort of written instrument, or else acknowledged on the record in open court. In any case, we agree with the District Court that such an agreement would have no legal effect. Parties cannot by stipulation bind the court on a question of law. The same result could perhaps have been accomplished by filing a superseding indictment charging a conspiracy that was fully completed by November 1, but that did not happen here. So the question is simply this: do the Guidelines apply to a continuing offense begun before November 1 but continuing until on or after that date?

### III.

In determining whether the Guidelines apply to conspiracies which straddle their effective date, we must examine two issues: (1) whether application of the Guidelines violates the Ex Post Facto Clause, and (2) whether application of the Guidelines to a continuing offense is required by the statute. After considering both questions, we conclude that the Guidelines do apply.

■ Article I of the Constitution provides that neither Congress nor the States shall pass any ex post facto law. Within the meaning of ex post facto law is a law which " 'changes the punishment, and inflicts a greater punishment, than the law annexed to the crime when committed.' " *Miller v. Florida,* 482 U.S. 423, 429, 107 S.Ct. 2446, 2450, 96 L.Ed.2d 351 (1987) (quoting *Calder v. Bull,* 3 Dall. 386, 1 L.Ed. 648 (1798)).

As an original matter, one might think that application of the Guidelines to con-duct occurring before their effective date violates the Ex Post Facto Clause. However, "[i]t is well-established that a statute increasing a penalty with respect to a criminal conspiracy which commenced prior to, but was continued beyond the effective date of the statute, is not ex post facto as to that crime." *United States v. Campanale,* 518 F.2d 352, 365 (9th Cir.1975), *cert. denied,* 423 U.S. 1050, 96 S.Ct. 777, 46 L.Ed.2d 638 (1976); *United States v. Baresh,* 790 F.2d 392, 404 (5th Cir.1986); *United States v. Giry, supra.* Indeed the Fifth Circuit has already held that application of the Sentencing Guidelines to a conspiracy which straddles the Guidelines' effective date does not violate the Ex Post Facto Clause. *United States v. White,* 869 F.2d 822, 826 (5th Cir.), *cert. denied,* —— U.S. ——, 109 S.Ct. 3172, 104 L.Ed.2d 1033 (1989). We agree with this analysis.

■ Determining the intent of Congress on the continuing-offense question is more difficult. As originally enacted in 1985, the Guidelines were to "take effect on the first day of the first calendar month beginning twenty-four months after the date of enactment," a date which worked out to be November 1, 1987. Comprehensive Crime Control Act of 1984, Pub.L. No. 98–473, § 235(a)(1), 98 Stat. 2031 (1985). Later concern that the statute might violate the Ex Post Facto Clause led to its amendment on December 14, 1987. See generally *Sentencing Guidelines: Hearings Before the Subcommittee on Criminal Justice of the House Committee on the Judiciary,* 100th Cong., 1st Sess. 83–145 (1987). The phrase "and shall apply only to offenses committed after the taking effect of this chapter" was added to the effective-date provision. Sentencing Act of 1987, Pub.L. No. 100–182, § 2(a), 101 Stat. 1266 (1987). However, from the face of the statute, even as amended, it is unclear whether a conspiracy which straddles the effective date was meant to be covered by the Guidelines.

Review of House and Senate debates on the Guidelines is instructive. During the

House debates on the 1987 amendments, Representative Conyers, the manager of the bill, inserted in the record a section-by-section analysis prepared by the staff of the House Committee on the Judiciary. With respect to the effective-date provision, this analysis stated:

The phrase "offenses committed after the taking effect of the Sentencing Reform Act" added by this legislation means an offense begun and completed after the taking effect of the Sentencing Reform Act of 1984. Thus, the provisions of the Sentencing Reform Act of 1984 would not apply to an offense begun before November 1, 1987 and completed after that date. The policy considerations that constitute the rationale for section 2(a) of this legislation make a different approach unwise policy and constitutionally suspect.

133 Cong.Rec. H10,019 n. 5. (daily ed. Nov. 16, 1987).

The Senate sponsors of the Guidelines, Senators Biden, Thurmond, Kennedy, and Hatch, strongly disapproved of the House analysis: "[t]his ... analysis was not part of the compromise that the Senate sponsors entered into with the House and, indeed, had never been discussed with the Senate sponsors of the bill." 133 Cong. Rec. S16,646 (daily ed. Nov. 20, 1987). In particular, the Senators took issue with the interpretation of the effective-date provision. In a statement placed in the Record by Senator Biden, the manager of the bill, they said:

First, in discussing the effective date provision in Section 2 of S. 1822 the House states that "the provisions of the Sentencing Reform Act of 1984 would not apply to an offense begun before November 1, 1987 and completed after that date." This was not the intent of the Senate. It is the view of the Senate sponsors, and the view of the Department of Justice, that the sentencing guidelines should be given effect with respect to any continuing offense completed after November 1, 1987. Application of the guidelines to such offenses would not violate the ex post facto clause of the Constitution and, indeed, would seem to be the settled interpretive approach to construing the effective date of a criminal statutory provision. See *United States v. Campanale*, 518 F.2d 352, 364–65 (9th Cir.1975) (and cases cited), *cert. denied*, 423 U.S. 1050 [96 S.Ct. 777, 46 L.Ed.2d 638] (1976); *United States v. Baresh*, 790 F.2d 392, 404 (5th Cir.1986); *United States v. Todd*, 735 F.2d 146, 150 (5th Cir.1984), *cert. denied*, 469 U.S. 1189 [105 S.Ct. 957, 83 L.Ed.2d 964] (1985). As the Senate's section-by-section analysis of S. 1822 indicates, the purpose of Section 2 of the bill (formerly Section 102) is to avoid possible ex post facto problems with current law. This section should not be construed to limit the application of the sentencing guidelines beyond what the Senate—the body that originated this legislation—has deemed necessary to guard against those possible constitutional problems.

*Id.*

The Senate sponsors' view of the new provision was shared by President Reagan when he signed the bill into law: "Consistent with past law on the subject, I understand section 2 of S. 1822 to mean that the Sentencing Reform Act applies to offenses completed after it took effect. Offenses begun prior to, but not completed until on or after, November 1, 1987, will be subject to the Sentencing Reform Act." President's Statement Upon Signing S. 1822, 23 Weekly Comp.Pres.Doc. 1452 (December 14, 1987), *reprinted in* 1987 U.S.Code Cong. & Admin.News 2135.

We conclude that the weight of the evidence on the question of legislative intent favors application of the Guidelines to continuing offenses like the conspiracy before us. The view of the Senate sponsors, quoted above, comes from the four senior mem-

bers of the Senate Judiciary Committee, in which the bill that became the 1987 amendments originated. The views of Mr. Conyers, the House manager, would normally be entitled to equal weight, but in the peculiar circumstances of this case we find them less persuasive. The President, after all, has a part in the legislative process, too, except as to bills passed over his veto, and his intent must be considered relevant to determining the meaning of a law in close cases. So two of the three principal actors in the legislative process—the Senate and the President—are on one side of the issue, while only one—the House—is on the other.

 We concede that this sort of numerical score-keeping may be a somewhat shaky approach to the divination of legislative intent, but if we had no legislative history at all, we should come to the same conclusion. Tharp was charged with an offense that was not completed until after November 1. That offense, we think, was "committed" after November 1 within the meaning of the amended statute. It is immaterial that the pleader, here the United States Attorney and the grand jury, could have charged him with a wholly pre-Guidelines offense.[3] The offense pleaded in the indictment was not completed, that is, did not exist, until after the Guidelines had become effective. This conclusion is fortified when we consider the general purpose of the new law: to replace the old system of discretionary sentencing, which was thought to lead to unfairness and disparate treatment of offenders. This purpose is advanced by interpreting the effective-date provision of the new law liberally in favor of applying the Guidelines. So long as the Constitution is not violated, and the words of the statute will bear such an interpretation, we think it should be adopted.

We conclude that the Guidelines are properly applied to a conspiracy begun before their effective date and ending after it. Accordingly, the judgment of the District Court is affirmed.

BOWMAN, Circuit Judge, concurring.

I concur in the Court's result and most of its reasoning. I see no reason, however, to inquire in this case into the legislative history of the Sentencing Guidelines. As the Court points out, *ante* at page 693, Tharp's offense—a conspiracy that straddled the effective date of the Guidelines—was not completed, and therefore did not exist, until after the Guidelines had become effective. It follows that the offense was not "committed" until after the effective date of the Guidelines and that it plainly is subject to sentencing under the Guidelines.

I totally agree with the Court's observation, *ante* at page 693, that we would reach the same conclusion without resort to the legislative history. Because the meaning of the controlling statute as applied to this case is plain, there is simply no reason to explore its legislative history, and I would eschew doing so.

**3.** Without discussing the constitutional or statutory-construction issues, another panel of our Court has held that the Guidelines apply to conspiracies which occur both before and after November 1, 1987. See *United States v. Stewart*, 878 F.2d 256 (8th Cir.1989) (citing *United States v. White, supra*).