UNITED STATES of America, Appellee,

v.

**Wayne OLDERBAK, Appellant.**

**No. 91–2165.**

United States Court of Appeals,
Eighth Circuit.

Submitted Oct. 18, 1991.

Decided April 10, 1992.

Rehearing Denied June 5, 1992.

758

Duane L. Nelson, Lincoln, Neb., argued, for appellant.

William W. Mickle, II, Omaha, Neb., argued, for appellee.

Before WOLLMAN, Circuit Judge, ROSS, Senior Circuit Judge, and LOKEN, Circuit Judge.

ROSS, Senior Circuit Judge.

Wayne Olderbak appeals his conviction and sentence on one count of conspiracy to distribute and possess with the intent to distribute cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 846. We affirm Olderbak's conviction and sentence.

## I.

On January 18, 1990, Wayne Olderbak was charged, along with three co-defendants, with drug-related offenses committed between January 1, 1987, and December 3, 1987. From January to late-September, 1987, Olderbak lived in Lincoln, Nebraska, with his fiancee. During that period, he was addicted to cocaine. He regularly purchased the drug from a co-worker, Pedro Serpa, for his own use, to share with his friends, and for distribution to others.

Based upon information from confidential informants of drug activity at Olderbak's residence, local authorities obtained and placed a pen register on Olderbak's telephone pursuant to a subpoena issued by the County Attorney of Lancaster County, Nebraska, on August 20, 1987. A month later, a wiretap was placed on Olderbak's telephone pursuant to an order of the District Court of Lancaster County, Nebraska,

issued September 21, 1987. During the last week of September, 1987, Olderbak and his fiancee suddenly moved to California. At trial, Olderbak testified that the reason he moved to California was to escape the drug scene in Lincoln and to avoid debt he had incurred there. After his move, Olderbak occasionally made telephone contact with his friends in Lincoln; he did not, however, continue to actively participate in or concern himself with the distribution of cocaine in the Lincoln, Nebraska area.

Prior to trial, Olderbak moved to suppress the pen register and wiretap evidence, but his motions were denied by the district court.[1] Following a nine-day trial, the jury found Olderbak guilty on one count of conspiracy to distribute and possess with the intent to distribute cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 846; he was acquitted of all other counts.[2] Thereafter, the district court denied his motions for judgment of acquittal and for new trial, and sentenced him to 46 months imprisonment under the Sentencing Guidelines. On appeal, Olderbak argues that: (1) the indictment was legally insufficient; (2) the district court erred in denying his pre-trial motions to suppress pen register and wiretap evidence, and to dismiss for lack of speedy trial; (3) the district court erred in denying his post-trial motions for judgment of acquittal and new trial; (4) he was denied due process as a result of investigative and prosecutorial misconduct; and (5) the district court erred in imposing sentence.

## II.

### A. *Sufficiency of the Indictment*

■ Olderbak first challenges the sufficiency of Count I of the indictment, asserting that Count I merely tracked the statutory language of 21 U.S.C. § 841 and failed to adequately apprise him of the facts and circumstances of the offense, as required by Fed.R.Crim.P. 7(c)(1). Count I of the indictment provided as follows:

A. Between on or about the 1st day of January, 1987, and the 3rd day of December, 1987, in the District of Nebraska and elsewhere, TERRY L. SCHWARCK, TERRY W. DUNLOP, WAYNE R. OLDERBACK, AND BONNIE L. KRAUS, the defendants herein, did wilfully and knowingly combine, conspire, confederate, and agree together with other persons, including, but not limited to, Pedro Serpa and Jeffrey L. Will, to distribute and possess, with the intent to distribute, a controlled substance, that is, cocaine, a Schedule II controlled substance, in violation of Title 21, United States Code, Section 841(a)(1), in an amount in excess of 500 grams. In violation of Title 21, United States Code, Section 846.

The indictment in this case is nearly identical to the indictment set forth in *United States v. Peterson*, 867 F.2d 1110 (8th Cir. 1989). In that case, this court rejected the defendants' claim that the indictment listed nothing more than statutory language, stating that,

'[A]n indictment is sufficient if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense.' Indictments are normally sufficient unless no reasonable construction can be said to charge the offense.

* * * * * *

The indictment [in this case] lists both a limiting time frame for the crimes and specifies the types of drugs involved. In view of these limitations we cannot say

---

1. The Honorable Warren K. Urbom, Senior United States District Judge for the District of Nebraska.

2. In addition to Count I, Olderbak had been charged with Counts II, III, IV and V, for substantive acts of his co-conspirators under *Pinkerton v. United States*, 328 U.S. 640, 646–48, 66 S.Ct. 1180, 1183–84, 90 L.Ed. 1489 (1946) (holding that a defendant may be held responsible for the substantive acts of his co-conspirators in furtherance of the conspiracy, even though the defendant did not participate in the substantive crime).

that the [defendants] could have failed to realize exactly what conduct the trial concerned.

*Id.* at 1114 (citations omitted). As in *Peterson,* the indictment in this case sufficiently apprised the defendants of the time frame of the alleged drug activity, the members of the alleged conspiracy, and the type of drugs involved. Therefore, we conclude that the indictment met the requirements of Fed.R.Crim.P. 7(c)(1) and that the district court did not err in denying Olderbak's motion to dismiss the indictment.

### B. *Suppression of Evidence*

■ Next, we consider Olderbak's claim that the district court erred in denying his motions to suppress pen register and wiretap evidence obtained at his residence in Lincoln, Nebraska.

With respect to the pen register evidence, Olderbak argues that use of the pen register was improper, because the Lancaster County Attorney, who issued the subpoena requesting installation of the pen register, did not have statutory authority to issue the subpoena under Neb.Rev.Stat. § 86-709. This claim is without merit. We have previously stated the general rule that "wiretap or other evidence obtained without violating the Constitution or federal law is admissible in a federal criminal trial even though obtained in violation of state law." *United States v. Neville,* 516 F.2d 1302, 1309 (8th Cir.), *cert. denied,* 423 U.S. 925, 96 S.Ct. 269, 46 L.Ed.2d 251 (1975). *See also United States v. Covos,* 872 F.2d 805, 807 (8th Cir.), *cert. denied,* 493 U.S. 840, 110 S.Ct. 124, 107 L.Ed.2d 85 (1989). Furthermore, in *Smith v. Maryland,* 442 U.S. 735, 742-46, 99 S.Ct. 2577, 2581-83, 61 L.Ed.2d 220 (1979), the Supreme Court held that the installation and use of a pen register is not a "search" under the fourth amendment and does not require authorization by court order. Thus, regardless of whether the subpoena issued by the Lancaster County Attorney was proper under state law, an issue which we do not decide, it is clear as a matter of federal law that the results of the pen register on Olderbak's residence telephone were admissible in Olderbak's federal crim-

inal trial. *See also United States v. Brown,* 941 F.2d 656, 658 (8th Cir.1991) (rejecting the claim that a warrant was required for installation of a pen register). We therefore conclude that the district court did not err in denying Olderbak's motion to suppress pen register evidence.

■ With respect to the wiretap evidence, Olderbak argues that the district court erred in denying his motion to suppress because the wiretap was improperly obtained on the basis of false information provided to investigators by a confidential informant. Olderbak asserts that the informant lied about having purchased cocaine from Olderbak in an effort to "cooperate" with the investigating officers without naming his real cocaine source. This claim is also without merit. Where a criminal defendant seeks suppression of evidence by challenging the veracity of information contained in the warrant affidavit, it is clear under *Franks v. Delaware,* 438 U.S. 154, 171, 98 S.Ct. 2674, 2684, 57 L.Ed.2d 667 (1978), that the only relevant inquiry is whether the *warrant affiant* knowingly, deliberately or recklessly included false statements in the warrant affidavit.

The district court held an evidentiary hearing on Olderbak's motion to suppress wiretap evidence and heard testimony from the informant, the investigating officer to whom the informant had reported the cocaine purchases from Olderbak, and the officer who was the affiant for the wiretap warrant. After the hearing, the district court denied Olderbak's motion to suppress, concluding there was no evidence that any of the officers knowingly, intentionally or recklessly included false information on the warrant affidavit.

■ We review the district court's disposition of the motion to suppress under a clearly erroneous standard. *United States v. Lueth,* 807 F.2d 719, 725 (8th Cir.1986). Having reviewed the record in this regard, we cannot say that the district court clearly erred in its findings. We therefore affirm the district court's denial of Olderbak's motion to suppress wiretap evidence.

## C. *Speedy Trial*

■ Next, we consider Olderbak's claim that he was denied a speedy trial as provided by 18 U.S.C. § 3161(c)(1). He alleges that more than 70 non-excludable days had passed between his first court appearance on February 12, 1990, and jury selection on January 11, 1991.

■ 18 U.S.C. § 3161(c)(1) requires that a criminal defendant be tried "within 70 days of the latest of a defendant's indictment, information, or appearance, barring periods of excludable delay." *Henderson v. United States*, 476 U.S. 321, 326, 106 S.Ct. 1871, 1874, 90 L.Ed.2d 299 (1986). Subsection (h)(1)(F) of § 3161 excludes delay for pre-trial motions, from the filing of the motion through the conclusion of the hearing on the motion or resolution of the motion. *Id.* at 326–27, 106 S.Ct. at 1874–75. Subsection (h)(1)(J) of § 3161 also excludes time, not to exceed thirty days, for any proceeding concerning the defendant which is actually under the court's advisement. In multiple defendant cases, the filing of pre-trial motions by one defendant tolls the speedy trial "clock" as to all other defendants who have not entered pleas or whose cases have not been severed. *See United States v. Winfrey*, 900 F.2d 1225, 1227 (8th Cir.1990); *United States v. Jones*, 801 F.2d 304, 316 (8th Cir.1986).

We have reviewed the magistrate's calculation of time for speedy trial purposes, which the district court adopted, and find no error. Following Olderbak's initial appearance, co-defendant Terry Dunlop's filing of pretrial motions on February 27, 1990, and subsequent filings by Olderbak and co-defendant Bonnie Kraus, stopped the speedy trial clock, which did not begin running again until resolution of all such motions on July 12, 1990. There were also related excludable delays between July 12, 1990, and November 27, 1990, involving additional motions by co-defendant Kraus and a motion by the government to set the case for trial. The clock began running again on November 28, 1990, but was stopped again on January 8, 1991, when Olderbak filed his motion to dismiss for lack of speedy trial. The magistrate rec-

ommended to the district court that Olderbak's motion to dismiss be denied, finding that a total of fifty-six days had run on the speedy trial clock, i.e., fourteen days for the period February 13 through February 27, 1990, plus forty-two days for the period November 28, 1990 through January 8, 1991. Olderbak's arguments that the magistrate's speedy trial calculation should have been any different are without merit. We therefore affirm the district court's denial of Olderbak's motion to dismiss for lack of speedy trial.

## D. *Post-trial Motions*

■ Olderbak claims that the district court erred in denying his motions for judgment of acquittal and new trial. Olderbak argues that the district court should have entered judgment of acquittal because it failed to instruct the jury that it must find, as an element of the crime charged, the quantity of cocaine alleged in the indictment, i.e., 500 grams or more. In *United States v. Padilla*, 869 F.2d 372, 381 (8th Cir.1989), we recognized that the quantity of cocaine alleged in an indictment is a particular fact relevant only for purposes of sentencing. In other words, quantity of cocaine is not an essential element of the crime to be decided by the jury. Other circuits have reached the same conclusion. *See, e.g., United States v. McNeese*, 901 F.2d 585, 600–01 (7th Cir.1990); *United States v. Brown*, 887 F.2d 537, 540 (5th Cir.1989); *United States v. Gibbs*, 813 F.2d 596, 599–600 (3d Cir.), *cert. denied*, 484 U.S. 822, 108 S.Ct. 83, 98 L.Ed.2d 45 (1987). Thus, the district court did not err in refusing to instruct the jury to find the quantity of cocaine alleged in the indictment, and we affirm the district court's denial of Olderbak's motion for judgment of acquittal.

■ Olderbak also argues that the district court should have granted his motion for new trial because it failed to instruct the jury that it must find (1) the quantity of cocaine, i.e., 500 grams or more, as alleged in the indictment, and (2) a large, multi-party conspiracy, as described in the government's bill of particulars. This ar-

gument is also without merit. As we have already noted above, the quantity of cocaine was not an essential element of the crime to be decided by the jury. Likewise, a large, multi-party conspiracy is not an essential element of the crime charged. Thus, we conclude that the district court did not err in refusing to instruct the jury on these points, and affirm the district court's denial of Olderbak's motion for new trial.

### E. Investigative and Prosecutorial Misconduct

Olderbak next argues that he was denied due process as a result of various acts of investigative and prosecutorial misconduct. He asserts that the government engaged in the following acts of misconduct: (1) unauthorized installation of a pen register; (2) use of unauthorized pen register evidence and false affidavit to obtain a wiretap order; (3) delay in prosecution; (4) refusal to provide exculpatory evidence in violation of *Brady v. Maryland*, 373 U.S. 83, 87, 83 S.Ct. 1194, 1196, 10 L.Ed.2d 215 (1963); (5) filing a bill of particulars with false statements regarding cocaine purchases from Olderbak; (6) "secretly" filing an amended bill of particulars with significant changes; and (7) filing of a second amended bill of particulars following denial of Olderbak's motion to dismiss or for mistrial.

Olderbak's claims of misconduct are frivolous. First, as we have noted above, the government's installation of the pen register was not a "search" under the fourth amendment, and thus the government was not required to obtain a court order. Second, as we have also noted, Olderbak failed to establish that any of the officers knowingly, intentionally or recklessly included false information on the wiretap affidavit in order to obtain the wiretap order. Thus, we conclude that there was no misconduct involved in the government's installation of the pen register and the wiretap.

■ We also see no merit to Olderbak's claim of misconduct by delay in prosecution. Although it is true that the specific acts charged in the indictment occurred prior to December 3, 1987, that the government's investigation was completed by September of 1988, and that Olderbak was not charged until January of 1990, those facts alone do not establish that Olderbak was prejudiced as a result of the delay. The district court, adopting the magistrate's findings, denied Olderbak's motion to dismiss for pre-indictment delay on the ground that Olderbak failed to establish actual prejudice, as required by this court in *United States v. Bartlett*, 794 F.2d 1285, 1289-90 (8th Cir.), *cert. denied*, 479 U.S. 934, 107 S.Ct. 409, 93 L.Ed.2d 361 (1986).[3] Specifically, it held that Olderbak's failure to identify the significance of any testimony from co-conspirators Pedro Serpa or Brad Funk, unavailable due to their incarceration outside of the State of Nebraska, or to identify the significance of any other unavailable witnesses or lost evidence, was fatal to his claim of prejudice. We agree with the district court's analysis of this claim. Therefore, we affirm the district court's denial of Olderbak's motion to dismiss for pre-indictment delay.

■ Olderbak also claims that the government withheld exculpatory evidence in violation of *Brady v. Maryland, supra*, 373 U.S. 83, 83 S.Ct. 1194. Olderbak refers to the claim that the government learned of

---

3. In *United States v. Bartlett*, 794 F.2d 1285 (8th Cir.), *cert. denied*, 479 U.S. 934, 107 S.Ct. 409, 93 L.Ed.2d 361 (1986), we stated,

> The defendant bears the burden of proving actual prejudice flowing from the pre-indictment delay. To prove actual prejudice, a defendant must specifically identify witnesses or documents lost during delay properly attributable to the government. Speculative or conclusory claims alleging "possible" prejudice as a result of the passage of time are insufficient. The defendant must also relate the substance of the testimony which would be offered by the missing witnesses or the information contained in lost documents in sufficient detail to permit a court to assess accurately whether the information is material to the accused's defense. Finally, the defendant must show that the missing testimony or information is not available through substitute sources. In sum, the defendant must demonstrate that the prejudice *actually* impaired his ability to meaningfully present a defense.

> *Id.* at 1289–90 (emphasis original) (citations omitted).

inaccuracies contained within the wiretap warrant affidavit. In *Brady,* the Supreme Court held that, "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Id.* at 87. Neither the record nor Olderbak's argument persuade us that the evidence to which Olderbak refers was material to his defense. We therefore conclude that the district court did not err in rejecting Olderbak's claim of a *Brady* violation.

■ We also find no merit to any of Olderbak's claims as to the government's filing of its bills of particulars. Having reviewed the record of the hearing held prior to trial on these matters, it is clear that any inaccuracies contained in the government's initial filing of its bill of particulars were not intentional, but merely the result of information gathered from various police reports. Also, it is clear that the subsequent amendments to the government's bill of particulars were nothing more than the government's attempts to more accurately reflect the evidence which it intended to prove at trial. Most importantly, Olderbak has failed to demonstrate any actual prejudice as a result of these filings. Therefore, Olderbak's claims of prosecutorial misconduct in the government's filing of its bills of particulars must fail.

#### F. *Sentence*

■ Finally, Olderbak makes several arguments with respect to his sentence: first, he asserts that the district court improperly applied the Sentencing Guidelines to his case; alternatively, he argues that his sentence is excessive; and lastly, he argues that he was entitled to a downward departure for acceptance of responsibility.

The underlying assertion as to Olderbak's first two arguments is that the district court improperly included quantities of cocaine which were distributed by co-conspirators after Olderbak moved to California in late-September, 1987. Olderbak asserts that, because the jury acquitted him of Counts IV and V, relating to drug activity which occurred after he had moved to California,[4] it was improper for the district court to consider any drug quantities involved in those transactions at sentencing.

We find no merit to Olderbak's claim that the district court erred in applying the Sentencing Guidelines to his case. We have previously recognized that conspiracy is a continuing offense and that a defendant may be sentenced under the Sentencing Guidelines for his participation in any conspiracy that continued past November 1, 1987, the effective date of the Guidelines. *United States v. Stewart,* 878 F.2d 256, 259 (8th Cir.1989). We believe this is true even if the defendant performed no overt act in furtherance of the conspiracy after the effective date. *United States v. Tharp,* 892 F.2d 691, 695 (8th Cir.1989). In this case, there was sufficient evidence for the district court to decide that, regardless of Olderbak's absence, the drug conspiracy of which Olderbak was a member continued after November 1, 1987. We therefore conclude that the district court did not err in sentencing Olderbak under the Sentencing Guidelines.

■ Olderbak also claims that his sentence is excessive, because the district court improperly included quantities of cocaine which were distributed by his co-conspirators after he had moved to California. We are mindful that the district court's determination of quantity of cocaine for sentencing purposes is a factual determination subject to review under the clearly erroneous standard. *United States v.*

---

4. Count IV of the indictment charged that on or about November 13, 1987, Pedro Serpa and Jeffrey L. Will traveled between Lincoln, Nebraska, and the State of Florida, with the intent to carry on the business of the distribution of cocaine in furtherance of the conspiracy charged in Count I.

Count V of the indictment charged that on or about November 16, 1987, Pedro Serpa intentionally possessed with intent to distribute in excess of 500 grams of cocaine in furtherance of the conspiracy charged in Count I.

*Lawrence,* 915 F.2d 402, 405–06 (8th Cir. 1990).

In its findings for sentencing, the district court found that, in addition to three ounces of cocaine distributed by Olderbak to friends and one ounce foreseeably distributed by a co-conspirator to another, Olderbak was responsible for nine ounces of cocaine purchased and distributed by co-conspirator Pedro Serpa after Olderbak's departure to California. In finding responsibility for the latter amount, the district court stated,

> [T]he two trips to Florida by Serpa and Will, while within the scope of the conspiracy in Count I, were not reasonably foreseeable in terms of amounts that were actually received. Given Wayne Olderbak's limited relationship with Serpa for purchasing and distributing cocaine, I find that a reasonable expectation on the part of Wayne Olderbak was that Serpa would get through mid-November 1987, a multiple of three times the amount that Serpa had distributed to Wayne Olderbak during the summer and fall of 1987, which means about nine ounces. . . .

*United States v. Olderbak,* No. CR90–L–03, slip op. at 4 (May 8, 1991).

 Under subsection (a) of Section 1B1.3 of the Sentencing Guidelines, each conspirator is responsible for all criminal acts committed in furtherance of the conspiracy. *See* U.S.S.G. § 1B1.3(a)(1) and Comment n. 1. "[S]uch conduct is *not* included in establishing the defendant's offense level," however, if it "was neither within the scope of the defendant's agreement, nor was reasonably foreseeable in connection with the criminal activity the defendant agreed to jointly undertake." U.S.S.G. § 1B1.3 Comment n. 1. (emphasis added). *See United States v. Wilson,* 955 F.2d 547, 551 (8th Cir.1992). Thus, in considering Olderbak's argument, the question we must ask is whether the criminal acts of co-conspirator Serpa in November, 1987, after Olderbak's move to California, were "reasonably foreseeable" to Olderbak.

Here, the district court essentially held that, although the cocaine amounts actually received by Serpa in November of 1987 were not reasonably foreseeable to Olderbak, it was reasonably foreseeable to Olderbak that (1) Serpa would continue to receive cocaine amounts after Olderbak's move, and (2) that such amounts would be equal to at least three times the amounts previously transferred between Olderbak and Serpa during the summer and fall of 1987.

Having carefully considered the record, we cannot say that the district court's findings in these regards were clearly erroneous. There was no reason for Olderbak to believe that after his departure from Lincoln, Serpa would discontinue being a primary source of cocaine for others that Olderbak knew. Serpa's continued distribution was clearly foreseeable. The only remaining question then was how much of that cocaine was reasonably foreseeable.

 Although the district court did not make any reference to a specific formula or caselaw for its estimation of the cocaine for which it held Olderbak responsible, we find that such estimation is authorized by the Guidelines. Comment 2 to section 2D1.4 of the Guidelines provides that, "[w]here . . . the amount seized does not reflect the scale of the offense, the sentencing judge shall approximate the quantity of the controlled substance. In making this determination, the judge may consider, for example, . . . similar transactions in controlled substances by the defendant. . . ." U.S.S.G. § 2D1.4 Comment 2. In the record, there is sufficient evidence for the district court to have concluded that Olderbak was aware that Serpa had several (more than two) regular purchasers of cocaine. Based on this record, we cannot say that the district court clearly erred in its estimate of the amount of cocaine attributable to Olderbak.

 We specifically reject Olderbak's argument that he should not be held responsible for any of the cocaine amounts related to the circumstances charged in Counts IV and V, of which he was acquitted. Other circuits have rejected similar claims on the grounds that a verdict of acquittal only demonstrates lack of proof beyond a reasonable doubt and does not necessarily establish innocence of the crime charged. *See United States v. Rodriguez–*

*Gonzalez,* 899 F.2d 177, 181 (2d Cir.), *cert. denied,* — U.S. ——, 111 S.Ct. 127, 112 L.Ed.2d 95 (1990); *United States v. Mocciola,* 891 F.2d 13, 16–17 (1st Cir.1989); *United States v. Isom,* 886 F.2d 736, 738–39 & n. 3 (4th Cir.1989); *United States v. Juarez–Ortega,* 866 F.2d 747, 749 (5th Cir. 1989). *But see United States v. Brady,* 928 F.2d 844, 851–52 (9th Cir.1991). The facts underlying an acquittal may be considered by the district court for sentencing purposes when those facts appear to be sufficiently reliable; the government need not prove such facts beyond a reasonable doubt. *United States v. Wright,* 873 F.2d 437, 441 (1st Cir.1989).

■ Lastly, we consider Olderbak's claim that he was entitled to a downward departure for acceptance of responsibility. This claim is without merit. As noted by the district court, Olderbak's *only* indication of acceptance of responsibility for his criminal conduct was his testimony at trial, during which he made certain admissions. This alone was wholly insufficient to justify a downward departure in his base offense level. We therefore affirm the district court's refusal to decrease Olderbak's base offense level on this ground.

Accordingly, we affirm the judgment of the district court.