_____

No. 96-1723
_____

United States of America,　　　　*
　　　　　　　　　　　　　　　　*
　　　　Plaintiff-Appellee,　　　*
　　　　　　　　　　　　　　　　*　Appeal from the United States
　　　v.　　　　　　　　　　　　*　District Court for the
　　　　　　　　　　　　　　　　*　Western District of Missouri.
Michael Anthony Polk, also　　　*
known as Richard Davis, also　　*
known as Michael Dudley Pollard,*
　　　　　　　　　　　　　　　　*
　　　　Defendant-Appellant.　　 *

_____

Submitted:  September 11, 1996

Filed:  October 9, 1996
_____

Before MAGILL, FLOYD R. GIBSON, and LAY, Circuit Judges.

_____

LAY, Circuit Judge.


　　Michael Anthony Polk was indicted on a charge of possession with intent to distribute cocaine under 21 U.S.C. § § 841(a)(1) and (b)(1)(B). Following the indictment, Polk filed a motion to suppress cocaine seized from his duffle bag.  The district court[1] denied the motion, adopting the report and recommendation of the magistrate judge.[2]  Polk entered a conditional plea of guilty, and the district court sentenced him to seventy months imprisonment to be followed by a five-year term of supervised release.  Polk appeals the denial of his motion to suppress, claiming the government violated his Fourth Amendment rights when drug

_____

[1]The Honorable Joseph E. Stevens, Jr., United States District Judge for the Western District of Missouri.

[2]The Honorable Sarah W. Hays, United States Magistrate Judge for the Western District of Missouri.

enforcement agents stopped him at the Kansas City airport, questioned him, and searched his luggage pursuant to a warrant. Polk also claims the district court improperly sentenced him because it assigned responsibility to Polk for the entire net weight of a mixture containing cocaine, rather than taking into account only the "pure cocaine." We affirm.

I.

On March 29, 1994, a confidential informant ("CI") informed Detective Steve Santoli of the Jackson County, Missouri, drug unit that a courier transporting cocaine from Los Angeles would be arriving at Kansas City International Airport ("KCI") at 2:00 p.m. that day. The CI described the courier as a black male named "Mike," who was approximately 5'7" tall and had a thin build, a chipped front tooth, and a thin mustache. According to the CI, the courier probably would be wearing a jogging suit. Detective Santoli relayed this information to Detective Mark Braden of the Drug Interdiction Task Force at KCI.

On the afternoon of March 29, Detective Braden watched passengers depart USAir Flight 728 arriving from Los Angeles, which landed at 1:45 p.m. He noticed a man who fit the description given by the CI depart the plane and walk quickly from the terminal to the sidewalk outside. Detective Braden approached the man. Braden then displayed his badge and asked Polk if he could speak with him. Polk appeared nervous, but agreed to talk. Polk produced a one-way ticket he had purchased with cash under the name "Richard Davis," but could not produce any identification. When Detective Braden asked Polk the purpose of his trip to Kansas City, Polk responded he was visiting for a relative's funeral, but he could not remember the relative's last name. During this conversation, Detective Braden noticed that Polk had a chipped front tooth.

Polk told Detective Braden he had luggage which had arrived

-2-

earlier and which was sent to the address in Kansas City where he was to stay, but he could not recall the address. At that point, Detective Braden asked for Polk's consent to search the duffle bag Polk was carrying. Polk refused. Detective Braden told Polk he was detaining the bag for a canine sniff. He informed Polk that he was free to leave and that he could come back for the bag, which would be returned to him if the sniff was negative. Polk elected to wait. Three to four minutes later, the canine team came and a narcotics detection dog sniffed the bag and alerted to the presence of narcotics. Detective Braden told Polk he was going to detain him until a search warrant could be obtained for the bag. Based on Detective Braden's affidavit, a Platte County Circuit Judge issued a search warrant for the bag. The ensuing search revealed two tape-wrapped packages of cocaine.

After Polk's indictment and the denial of his motion to suppress, Polk entered a conditional plea of guilty. He was sentenced to seventy months imprisonment, to be followed by a five-year term of supervised release. The district court based the sentence on the total weight of the cocaine, found to be 500.97 grams. A forensic chemist testified at the sentencing hearing that the cocaine was eighty-five percent pure.

II.

On appeal, Polk argues (1) his initial encounter with Detective Braden was an investigative stop unsupported by the requisite articulable reasonable suspicion, (2) his luggage was detained improperly and without reasonable suspicion, and (3) the search warrant for his luggage was not supported by probable cause.

A.

Polk first contends that his initial encounter with Detective Braden was a seizure within the meaning of the Fourth Amendment.

An individual's encounter with a police officer rises to the level of a seizure when "the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen." Terry v. Ohio, 392 U.S. 1, 19 n.16 (1968). This court has refused to draw a bright line between police conduct that constitutes a seizure and police conduct that does not. Instead, our inquiry is fact-specific: whether "a reasonable person would not have believed himself free to leave." United States v. McKines, 933 F.2d 1412, 1419 (8th Cir.) (en banc), cert. denied, 502 U.S. 985 (1991). Though the factual findings made by the district court are subject to the clearly erroneous standard of review, whether a seizure occurred is a question of law we review de novo. United States v. Delaney, 52 F.3d 182, 186 (8th Cir.), cert. denied, 116 S. Ct. 209 (1995); McKines, 933 F.2d at 1426.

In Delaney, when two officers initially questioned the defendant, but did not prevent him from proceeding, threaten him, display weapons, or touch him, this court found a seizure did not occur. 52 F.3d at 186. Here, only one officer approached Polk, and the same factors missing in Delaney are missing here. Braden approached Polk on a public sidewalk and did not implicitly or explicitly threaten him in any way.

Arguably, the encounter rose to the level of a seizure when Detective Braden displayed his badge for the second time and informed Polk he was on narcotics detail at the airport. However, this court has refused to find that such factors, standing alone, constitute a Fourth Amendment seizure. McKines, 933 F.2d at 1418; see also United States v. Dixon, 51 F.3d 1376, 1380 (8th Cir. 1995) ("[T]hose factors do not, without more, convert a consensual encounter into a seizure."). In addition, as in Dixon, there seems to be a "lack of any other even mildly coercive tactics" presented here, thus indicating, for purposes of Fourth Amendment analysis, that a seizure did not occur. Id.; see also United States v. Green, 52 F.3d 194, 197 (8th Cir. 1995) (finding on similar facts

-4-

that "[a] request for information does not turn consensual questioning into an investigatory stop"); United States v. Dennis, 933 F.2d 671, 673 (8th Cir. 1991) (per curiam) (holding that no seizure occurred when the officers "were dressed in plain clothes and did not physically touch Dennis or display their weapons"). Finally, and perhaps most importantly, Braden told Polk he was free to leave and pick up his luggage later. Tr. of Suppression Hr'g, June 9, 1994, at 22.

B.

Even if the encounter rose to the level of an investigative stop, the government's conduct satisfies constitutional scrutiny because Detective Braden had reasonable suspicion warranting such a stop. In order to justify an investigative stop as constitutionally permissible, an officer must have reasonable suspicion, based on articulable facts, that criminal behavior is afoot. United States v. Bloomfield, 40 F.3d 910, 916 (8th Cir. 1994) (en banc), cert. denied, 115 S. Ct. 1970 (1995). This suspicion must be more than just an "unparticularized suspicion or 'hunch.'" Terry v. Ohio, 392 U.S. 1, 27 (1968). Rather, "the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." Id. at 21. This same standard governs detention of luggage for purposes of a limited investigation such as a canine sniff. United States v. Place, 462 U.S. 696, 708-09 (1985); see also Dixon, 51 F.3d at 1380 ("A detention of a traveler's property is subject to the same standards as a detention of a person.").

Most persuasive here is the CI's detailed description of a particular drug courier, which closely matched Polk's appearance. This court is more likely to find reasonable suspicion supporting a stop when a corroborated tip is among the government's presentation of proof. See United States v. Weaver, 966 F.2d 391,

394 n.2 (8th Cir.) (noting that reasonable suspicion was in part based on "intelligence information"), cert. denied, 506 U.S. 1040 (1992); United States v. Condelee, 915 F.2d 1206, 1208-10 (8th Cir. 1990) (finding reasonable suspicion in part based on officers' receipt of information that Los Angeles street gangs were using "sharply dressed black female couriers"). Indeed, the United States Supreme Court often has found the higher standard of probable cause met when police partially corroborate an informant's tip. See, e.g., Illinois v. Gates, 462 U.S. 213, 246 (1982); Draper v. United States, 358 U.S. 307, 313 (1959).

In addition to the CI's description, reasonable suspicion also is justified on the factors relied upon by the district court: (1) Polk arrived on an airplane from a known source city for drugs, (2) he was traveling alone, (3) he had one carry-on bag and, despite his statements to the contrary, had not checked any luggage, (4) he was traveling on a one-way ticket purchased under another name, (5) he said he had forgotten his identification, (6) he appeared nervous, (7) he was unsure of his reasons for his visit to Kansas City, and (8) he did not know the address where he would be staying in Kansas City. Report and Recommendation, June 23, 1994, at 8. This court has repeatedly held similar circumstances sufficient to justify a luggage detention. See, e.g., Delaney, 52 F.3d at 187 (listing similar factors and holding the investigative stop and luggage detention justified by reasonable suspicion); Dixon, 51 F.3d at 1382 (upholding an investigative stop where the defendant "had made a very brief trip, had not checked any baggage, could not answer all of the officers' questions, and was thought to have been previously arrested on a drug charge"). The facts here fit well within this line of cases. We consequently hold that the detention of Polk and his bag was supported by reasonable suspicion.

C.

Polk nonetheless maintains the denial of his motion to

suppress must be reversed because the search warrant used to search his bag was not issued on probable cause.  The government argues that the tip and its corroboration meet the test set out in <u>Gates</u>, which requires the search warrant to be supported by an affidavit that sets forth sufficient facts to lead a magistrate to believe there is a fair probability that contraband or evidence of a crime will be found in a particular place.  <u>Gates</u>, 462 U.S. at 238.  While the CI's description and Braden's independent investigative work may indeed meet the <u>Gates</u> standard of probable cause, we find such an inquiry irrelevant in light of the Supreme Court's holding in <u>United States v. Leon</u>, 468 U.S. 897 (1984).  Under <u>Leon</u>, "evidence seized pursuant to a warrant, even if obtained in violation of the Fourth Amendment, should not be excluded if an objectively reasonable officer could have believed the search was valid."  <u>United States v. Fletcher</u>, 91 F.3d 48, 51 (8th Cir. 1996) (citing <u>Leon</u>, 468 U.S. at 918).  <u>Leon</u> thus creates a "gray area" in which probable cause determinations are unnecessary.  <u>United States v. White</u>, 890 F.2d 1413, 1419 (8th Cir. 1989), <u>cert. denied</u>, 498 U.S. 825 (1990).

The detailed description from the CI, corroborated by the defendant's appearance and actions and the response from the trained narcotics detection canine, was sufficient to give the officer an objectively reasonable belief that the search of the luggage was supported by probable cause.  Therefore we hold the contents of the luggage were admissible pursuant to a constitutional search, and uphold the district court's denial of Polk's motion to suppress.

III.

Polk also contends that the district court erred in sentencing him according to the full weight of the 500-gram cocaine substance.  He urges that since the cocaine was only eighty-five percent pure, he should be sentenced based on the "pure" cocaine and not the

carrying agents.  Polk was sentenced under 21 U.S.C. § 841(b)(1), which "refers to a 'mixture or substance containing a detectable amount.'  So long as it contains a detectable amount, the entire mixture or substance is to be weighed when calculating the sentence."  <u>United States v. Chapman</u>, 500 U.S. 453, 459 (1991).  In <u>United States v. Stewart</u>, 878 F.2d 256 (8th Cir. 1989), the defendant claimed that the district court "should have considered only the 'pure' controlled substance and disregarded the amount of material mixed with it."  <u>Id.</u> at 259.  We rejected the argument, finding it "in direct conflict with the Guidelines."  <u>Id.</u>  We therefore find Polk's argument to be without merit.

AFFIRMED.


A true copy.

Attest:


CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.